**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| TERRAFORM LABS PTE. LTD., *et al.*,[1] | Case No. 24-10070 (BLS) |
| Post-Effective Date Debtors. | (Jointly Administered) |
| JOHNNY CHANG, | |
| Plaintiff, | Adversary Proceeding No. 26-50229 (BLS) |
| v. | |
| | **Re: Adv. D.I. 1 & 4** |
| TERRAFORM LABS PTE. LTD. WIND DOWN TRUST, | |
| Defendant. | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAN ADMINISTRATOR'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT FOR DETERMINATION OF PROPERTY OF THE ESTATE PURSUANT TO 11 U.S.C. § 541**

**July 20, 2026**

[1] The Post-Effective Date Debtors in these chapter 11 cases are: Terraform Labs Pte. Ltd. and Terraform Labs Limited. The Post-Effective Date Debtors' principal offices are located at 10 Anson Road, #10-10 International Plaza, Singapore 079903. The Plan Administrator of the Post-Effective Date Debtors is Todd R. Snyder. The Plan Administrator's principal office is located at 1251 Avenue of the Americas, New York, New York 10020.

**RICHARDS, LAYTON & FINGER, P.A.**
Zachary I. Shapiro (No. 5103)
Alexander R. Steiger (No. 7139)
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone: (302) 651-7700
Email: shapiro@rlf.com
steiger@rlf.com

*Co-Counsel for the Defendant*

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Christopher T. Greco, P.C. (admitted *pro hac vice*)
Elizabeth Helen Jones (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
Email christopher.greco@kirkland.com
elizabeth.jones@kirkland.com

-and-

Michael F. Williams, P.C. (admitted *pro hac vice*)
1301 Pennsylvania Ave., NW
Washington, DC 20004
Telephone: (202) 389-5000
Facsimile: (202) 389-5200
Email: michael.williams@kirkland.com

-and-

Christopher S. Koenig (admitted *pro hac vice*)
Casey McGushin (admitted *pro hac vice*)
333 West Wolf Point Plaza
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
Email chris.koenig@kirkland.com
casey.mcgushin@kirkland.com

*Co-Counsel for the Defendant*

# TABLE OF CONTENTS

**Page**


INTRODUCTION ....... 1

STATEMENT OF FACTS ....... 2

NATURE AND STATE OF THE PROCEEDINGS ....... 5

SUMMARY OF THE ARGUMENT ....... 6

MOTION TO DISMISS STANDARD ....... 6

ARGUMENT ....... 7

I. The Adversary Proceeding Is Not Proper Pursuant to Bankruptcy Rule 7001. ....... 7

II. Even if This Claims Dispute Was Proper as an Adversary Proceeding, It Is Barred by the Bar Date Order. ....... 8

III. The Adversary Complaint Fails to State a Claim. ....... 9

a. Title to the Tokens Passed to the Debtors Upon Transfer. ....... 10

b. The Adversary Complaint Does Not Allege Sufficient Facts to Succeed on a Claim for Constructive Trust or Conversion. ....... 12

IV. Mr. Chang's Request for Estimation and Allowance is Procedurally Improper in this Adversary Proceeding. ....... 14

V. Recharacterization of the Chang Crypto Loss Claim as a General Unsecured Claim Is Improper. ....... 14

CONCLUSION ....... 17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adams v. Jankouskas*, 452 A.2d 148 (Del. Sup. Ct. 1982) ........ 12

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........ 6-7, 9

*Asurion Ins. Servs., Inc. v. Kings Road Inv. Ltd. (In re Amp'd Mobile, Inc.)*, 377 B.R. 478 (Bankr. D. Del. 2007) ........ 10

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ........ 6, 9

*Cleveland-Cliffs Burns Harbor LLC v. Boomerang Tube, LLC*, 2023 WL 5688392 (Del. Ch. Sept. 5, 2023) ........ 10

*Condren v. Harrison (In re Borison)*, 226 B.R. 779 (Bankr. S.D.N.Y. 1998) ........ 11

*CVS Pharm., Inc. v. Forest Labs. Ireland, LTD v. Forest Laboratories Inc. (In re Watson Laboratories, Inc.)*, 101 F.4th 223 (2d Cir. 2024) ........ 9

*Ellison v. Ditech Financial, LLC (In re Ditech Holding Corp.)*, 2025 WL 1537869 (Bankr. S.D.N.Y. May 29, 2025) ........ 7

*Fowler v. UPMC Shadyside*, 578 F.3d 203 (3d Cir. 2009) ........ 6-7

*Goldberg v. South East Partners Corp. (In re Sturman)*, 222 B.R. 694 (Bankr. S.D.N.Y. 1998) ........ 11

*Halperin v. Moreno (In re Green Field Energy Services, Inc.)*, 610 B.R. 760 (D. Del. 2019) ........ 12

*In re Ausman Jewelers, Inc.*, 177 B.R. 282 (Bankr. W.D. Wis. 1995) ........ 10

*In re Drexel Burnham Lambert Grp., Inc.*, 148 B.R. 993 (S.D.N.Y. 1992) ........ 7

*In re Ephedra Prods. Liability Litig.*, 329 B.R. 1 (S.D.N.Y. 2005) ........ 7

*In re Hansen*, 341 B.R. 638 (Bankr. N.D. Ill. 2006) ........ 10

*In re Johns Manville Corp.*, 53 B.R. 346 (Bankr. S.D.N.Y. 1985) ........ 7

*In re Prime Core Techs.*, 673 B.R. 148 (Bankr. D. Del. 2025) ........ 10

*Jordan v. Beskrone (In re Prehired LLC)*, 677 B.R. 807 (Bankr. D. Del. 2025) ........ 10

*Maryland Credit Finance Corp. v. Campbell*, 195 A. 277 (Del. 1937) ........ 10

*Off. Comm. of Asbestos Claimants v. Asbestos Prop. Damage Comm. (In re Fed.-Mogul Glob., Inc.)*, 330 B.R. 133 (D. Del. 2005) .......... 14

*Ruggiero v. Estate of Poppiti*, 2005 WL 517967 (Del. Ch. Feb. 23, 2005) .......... 12

*Scott v. Aegis Mortg. Corp. (In re Aegis Mortg. Corp.)*, 2008 WL 2150120 (Bankr. D. Del. May 22, 2008) .......... 7

*SNMP Research Int'l, Inc. v. Nortel Networks Inc. (In re Nortel Networks Inc.)*, 2013 WL 6500224 (Bankr. D. Del. Dec. 10, 2013) .......... 13

**Statutes**

11 U.S.C. § 541(a) .......... 10-11

11 U.S.C. § 541(d) .......... 11-12

**Rules**

Fed. R. Bankr. P. 3003(c)(2) .......... 8, 16

Fed. R. Bankr. P. 7001 .......... 1, 6, 7-9, 14

Fed. R. Bankr. P. 7012 .......... 5-6, 9

Fed. R. Bankr. P. 9014 .......... 14-15

Fed. R. Civ. P. 12(b)(6) .......... 5-6, 9-10

## INTRODUCTION

1. The Adversary Complaint seeks the return of 2,246,480 TerraClassicUSD tokens (the "Tokens") that Mr. Chang alleges he voluntarily transferred to a Terraform-controlled wallet on May 23, 2021—nearly one year before the De-Peg occurred. As a threshold matter, the Adversary Proceeding is not the proper vehicle for Mr. Chang to pursue a recovery on account of his claims. Bankruptcy Rule 7001 enumerates the grounds for an adversary proceeding and does not include claim disputes. Such claims must instead be pursued through the claims administration process—here, the process governed by the Crypto Loss Claim Procedures. Indeed, Mr. Chang timely submitted a Crypto Loss Claim, and the Adversary Proceeding should be dismissed to allow the adjudication of his claim to be completed through the Crypto Loss Claim Process. More specifically, the Plan Administrator gave Mr. Chang a $0.00 Initial Determination, because Mr. Chang's Crypto Loss Claim demonstrates that he is a "net winner" who profited by nearly $2 million from Terraform cryptocurrency (even counting the transfer of the Tokens as a total loss). Mr. Chang appears to be pursuing this Adversary Proceeding because he recognizes that the Crypto Loss Claims Procedures bar his recovery. But the proper procedure is for Mr. Chang to dispute his claim pursuant to the Crypto Loss Claims Procedures, and the Adversary Complaint's attempt to do an end-run around the claims process should not be countenanced.

2. Another fatal procedural defect is that Mr. Chang did not timely file a Proof of Claim to preserve the claims in the Adversary Complaint (other than his Crypto Loss Claim). The General Bar Date required that any such claims be filed by August 9, 2024, which he does not allege that he has done. Each of the claims underlying the Adversary Complaint should be barred to the extent they are not a Crypto Loss Claim (which, as explained above, should be resolved through the claims allowance process, not this Adversary Proceeding).

3. Even if the Adversary Proceeding were procedurally proper, the Adversary Complaint fails to state a claim upon which relief can be granted, and accordingly, it should be dismissed as a matter of law. By his own allegations, Mr. Chang voluntarily transferred the Tokens to a Debtor-controlled cryptocurrency wallet, and he further alleges that the Debtors thereafter used the Tokens in the ordinary course of their business. According to non-bankruptcy law, title to the Tokens transferred to the Debtors when Mr. Chang voluntarily transferred them, and pursuant to section 541(a) of the Bankruptcy Code, the Tokens became property of the estate on the Petition Date. Mr. Chang has not pled facts sufficient to support imposition of a constructive trust or a claim for conversion.

4. For these reasons, and as more fully set forth herein, the Adversary Complaint should be dismissed.

## STATEMENT OF FACTS

5. On January 21, 2024 (the "Petition Date"), Terraform Labs Pte. Ltd. ("Terraform") filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"). Terraform Labs Limited ("TLL") subsequently filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on July 1, 2024 (the "TLL Petition Date"). On September 18, 2024, the Debtors filed the Plan, and on September 20, 2024, the Court entered the *Findings of Fact, Conclusions of Law, and Order Confirming Second Amended Chapter 11 Plan of Liquidation of Terraform Labs Pte. Ltd. and Terraform Labs Limited* confirming the Plan [Docket No. 734] (the "Confirmation Order"). The effective date of the Plan occurred on October 1, 2024 (the "Effective Date").[1] The history leading

[1] *See Notice of (I) Entry of Order Confirming the Second Amended Chapter 11 Plan of Liquidation of Terraform Labs Pte. Ltd. and Terraform Labs Limited and (II) Effective Date* [Docket No. 765].

up to the Debtors' chapter 11 cases is set forth in more detail in the *Declaration of Chris Amani in Support of the Debtor's Chapter 11 Petition and First Day Relief* [Docket No. 18] (the "First Day Declaration") and the *Disclosure Statement for Amended Chapter 11 Plan of Liquidation of Terraform Labs Pte. Ltd. and Terraform Labs Limited* [Docket No. 569] (the "Disclosure Statement").

6. On May 23, 2024, the Debtors filed the *Motion of Debtor For Entry of an Order (I) Establishing a General Bar Date to File Proofs of Claim, (II) Establishing a Bar Date to File Proofs of Claim by Governmental Units, (III) Establishing an Amended Schedules Bar Date, (IV) Establishing a Rejection Damages Bar Date, (V) Approving the Form and Manner for Filing Proofs of Claim, (VI) Approving the Form and Manner of Proposed Notice of Bar Dates, and (VII) Granting Related Relief* [Docket No. 349]. On July 9, 2024, the Bankruptcy Court entered the *Order (I) Establishing A General Bar Date To File Proofs Of Claim, (II) Establishing A Bar Date To File Proofs Of Claim By Governmental Units, (III) Establishing An Amended Schedules Bar Date, (IV) Establishing A Rejection Damages Bar Date, (V) Approving The Form And Manner For Filing Proofs Of Claim, (VI) Approving The Proposed Notice Of Bar Dates, and (VII) Granting Related Relief* [Docket No. 437] (the "Bar Date Order"), setting the deadline to file a Proof of Claim in respect of a Claim (as defined in section 101(5) of the Bankruptcy Code) arising prior to January 21, 2024 in the case of a claim against TFL, and July 1, 2024 in the case of a claim against TLL, including, for the avoidance of doubt, secured claims, priority claims, and claims arising under section 503(b)(9) of the Bankruptcy Code (the "General Bar Date") as August 9, 2024 at 5:00 p.m. (Eastern Time). The Plan Administrator's books and records reflect that Mr. Chang did not file a Proof of Claim prior to the General Bar Date, and the Adversary Complaint does not plead otherwise.

7. Pursuant to section 5.7 of the Plan, the Plan Administrator was charged with developing a process for allowing and valuing Crypto Loss Claims (as defined in the Plan). On January 31, 2025, the Plan Administrator filed the CLC Bar Date Motion, which sought approval of detailed CLC Procedures. On March 19, 2025, the Bankruptcy Court entered the *Order (I) Setting the Bar Date for Filing Proofs of Claim on Account of Crypto Loss Claims, (II) Approving the Form of and Manner for Filing Proofs of Claim, (III) Approving Form and Manner of Notice Thereof, and (IV) Approving Related Procedures* [Docket No. 965] (the "CLC Bar Date Order").

8. The CLC Bar Date Order established April 30, 2025 (the "CLC Bar Date") as the final date and time for all persons and entities to file Proofs of Claim on account of Crypto Loss Claims relating to or against the Debtors. Thereafter, the Plan Administrator extended the CLC Bar Date through and including May 16, 2025. *See Notice of Extension of Crypto Loss Claims Bar Date Until May 16, 2025* [Docket No. 986].[2] On May 16, 2025, Mr. Chang timely submitted a Crypto Loss Claim form (the "Chang Crypto Loss Claim"). On November 14, 2025, Mr. Chang received an Initial Determination on account of the Chang Crypto Loss Claim of $0.00, which he timely disputed. In accordance with the Crypto Loss Claim Procedures, Mr. Chang submitted Supplemental Evidence in support of his Asserted Crypto Loss, which is under review pending the Plan Administrator's Final Determination of his Crypto Loss Claim.

9. Mr. Chang alleges that, "[p]rior to the Petition Date, on or about May 23, 2021, at 4:54 a.m. (ET) [he] attempted to transfer 2,246,480 cryptocurrency tokens of TerraClassicUSD to a wallet controlled by a third party and unrelated to the Debtors," after initiating the transfer of the

---

2 The Plan Administrator extended the CLC Bar Date in light of the fact that the Online Portal for the submission of Crypto Loss Claims, previously communicated to be available on March 19, 2025, became available to claimants on March 31, 2025. *See Notice of Anticipated Opening of the Online Portal to Submit Proofs of Claim on Account of Crypto Loss Claims on March 31, 2025* [Docket No. 967].

"[] Tokens, [he] realized he had inadvertently transferred the Tokens to a cryptocurrency wallet controlled by the Debtors." Adversary Complaint, ¶¶ 17, 19. Mr. Chang alleges that the transfer was "mistakenly leaving his internet browser window open on the "Terrafinder" webpage identified as terra18kgwjqrm7mcnlzcy7l8h7awnn7fs2pvdl2tpm9" (the "Terra Wallet Address") and mistakenly transferring the [] Tokens to the Terra Wallet Address. *Id.* at ¶ 19. Mr. Chang alleges that on the date of the transfer, May 23, 2021, the Tokens were valued at .979015 cents each for a value of $2,199,337.00. *See id.* at ¶ 18.[3]

**NATURE AND STATE OF THE PROCEEDINGS**

10. On April 3, 2026, Plaintiff filed the *Complaint for Determination of Property of the Estate Pursuant to 11 U.S.C. § 541* [Adv. Pro. Docket No. 1] as amended by the Adversary Complaint filed on June 2, 2026. On June 10, 2026, the Plan Administrator and Mr. Chang entered into an agreed scheduling stipulation, subject to Court approval [Adv. Pro. Docket No. 5], extending (i) the Plan Administrator's time to answer, move, or otherwise respond to the Adversary Complaint to July 20, 2026, (ii) Plaintiff's deadline to object to the Motion to September 18, 2026, and (iii) the Plan Administrator's deadline to reply in support of the Motion to October 19, 2026. On June 11, 2026, the Court entered an order approving this stipulation (the "Scheduling Order") [Adv. Pro. Docket No. 6].

11. Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, as made applicable to this proceeding by Rule 7012 of the Federal Rules of Bankruptcy Procedure, the Plan Administrator has moved, simultaneously herewith, to dismiss the Adversary Complaint. This is

---

3 The facts surrounding the transfer of the Tokens recited in the Motion are restated according to Mr. Chang's account in the Adversary Complaint. For the avoidance of doubt, the Plan Administrator does not admit that the facts as Mr. Chang states them are correct but understands that the Court will take his allegations as true pursuant to Bankruptcy Rule 7012 for purposes of the Motion.

the *Memorandum of Law in Support of Plan Administrator's Motion to Dismiss the First Amended Complaint for Determination of Property of the Estate Pursuant to 11 U.S.C. § 541.*

## SUMMARY OF THE ARGUMENT

12. The Adversary Complaint fails both on procedural and substantive grounds. This is not a proper adversary proceeding pursuant to rule 7001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and, even if it were, the Adversary Proceeding is barred by the Bar Date Order. On the merits, the Adversary Complaint fails to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), made applicable herein by Bankruptcy Rule 7012.

## MOTION TO DISMISS STANDARD

13. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted); *accord Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement of relief.'" *Id*. (citation omitted). The Court is only required to accept a complaint's well-pleaded factual allegations as true. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). It is not required to accept the plaintiff's legal conclusions. *Id.* In addition, a complaint "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

Similarly, "'[t]hreadbare recitals of [such] elements . . . supported by mere conclusory statements, do not suffice.'" *Fowler*, 578 F.3d at 210 (quoting *Iqbal*, 556 U.S. at 678).

14. For the reasons set forth below, the Complaint falls short of the *Iqbal/Twombly* pleading standard.

## ARGUMENT

### I. The Adversary Proceeding Is Not Proper Pursuant to Bankruptcy Rule 7001.

15. The Bankruptcy Code and Bankruptcy Rules are clear that claims for recovery against a debtor must be brought through the claims process and not through an adversary proceeding. *See* Bankruptcy Rule 7001 (enumerating a complete list of adversary proceedings, which does not include claim disputes). Courts nationwide have reaffirmed this core principle. Bankruptcy Rule 7001 "contains [an] exclusive list of matters which are classified as adversary proceedings. The list does not include a category for the recovery of claims against the debtor." *See Ellison v. Ditech Financial, LLC (In re Ditech Holding Corp.)*, 2025 WL 1537869, at *11 (Bankr. S.D.N.Y. May 29, 2025) (quoting *In re Johns Manville Corp*., 53 B.R. 346, 352–55 (Bankr. S.D.N.Y. 1985)); *see also Scott v. Aegis Mortg. Corp. (In re Aegis Mortg. Corp.)*, 2008 WL 2150120, at *6 (Bankr. D. Del. May 22, 2008) (finding that "a claim for damages arising from pre-petition conduct does not fall within one of the[] ten categories [enumerated in Bankruptcy Rule 7001]") (referencing *In re Drexel Burnham Lambert Grp., Inc.*, 148 B.R. 993, 998 (S.D.N.Y. 1992)). Courts have held that "the only appropriate way to assert a claim against a debtor's estate is through the timely filing of a properly executed proof of claim and not through an adversary proceeding." *In re Ephedra Prods. Liability Litig.*, 329 B.R. 1, 7 (S.D.N.Y. 2005) (internal marks omitted) (citation omitted).

16. The Adversary Complaint seeks damages stemming from prepetition conduct of the Debtors relating to the transfer of the Tokens. This claim may only be pursued by timely filing

a proof of claim—more specifically here, a Crypto Loss Claim form. Mr. Chang timely filed a Crypto Loss Claim form prior to the CLC Bar Date, and the Chang Crypto Loss Claim is currently being evaluated by the Plan Administrator as part of the Crypto Loss Claim reconciliation process. The Adversary Proceeding should be dismissed so that the Chang Crypto Loss Claim can be adjudicated in accordance with the Crypto Loss Claim Procedures.

## II. Even if This Claims Dispute Was Proper as an Adversary Proceeding, It Is Barred by the Bar Date Order.

17. As discussed above, the Adversary Proceeding is not proper pursuant to Bankruptcy Rule 7001, but even if it was, it would still be barred by the Bar Date Order because Mr. Chang did not file a Proof of Claim preserving the claims underlying the Adversary Proceeding by the General Bar Date.[4] The Bar Date Order specifically details who needed to file a Proof of Claim by the Bar Date—namely, "any person or entity whose claim against the Debtors is not listed in the Debtors' Schedules"—and who did not—claimants asserting a Crypto Loss Claim. *See* Bar Date Order, ¶¶ 4–5. Pursuant to the Bar Date Order, "any holder of a claim who is required to timely file a Proof of Claim on or before the applicable Bar Date, but fails to do so, shall not be treated as a creditor with respect to such claim for the purposes of . . . [a] distribution in the Chapter 11 Cases on account of such claim." *Id.* at ¶ 7. The Bar Date Order and Bankruptcy Rule 3003(c)(2) plainly foreclose attempts to recover on account of a claim for which a Proof of Claim was not timely filed. *See id. at* ¶ 6 ("Except as set forth [in the Bar Date Order], each person and entity that asserts a claim against the Debtors that arose before the applicable Petition Date shall be required to file a Proof of Claim."). The Adversary Proceeding, if not dismissed as procedurally

---

[4] To preserve his Crypto Loss Claim (count IV of the Adversary Complaint), Mr. Chang only needed to timely file a Crypto Loss Claim by the CLC Bar Date, which he did, but as described in Section I, *infra*, such claim can only be pursued through the claims reconciliation process governed by the Crypto Loss Claim Procedures.

improper pursuant to Bankruptcy Rule 7001, should be dismissed as a violation of the Bar Date Order.

**III. The Adversary Complaint Fails to State a Claim.**

18. The Plan Administrator seeks dismissal of the Adversary Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), made applicable herein by Bankruptcy Rule 7012. Rule 12(b)(6) requires dismissal of a claim when a plaintiff fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). For purposes of Rule 12(b)(6), the Bankruptcy Court must decide whether the facts alleged, if true, "state a claim to relief that is plausible on its face." *CVS Pharm., Inc. v. Forest Labs. Ireland, LTD v. Forest Laboratories Inc. (In re Watson Laboratories, Inc.)*, 101 F.4th 223, 235 (2d Cir. 2024) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). At a minimum, such allegations must "raise a right to relief above the speculative level." *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "When the court can infer only a 'mere possibility of liability,' 'the complaint has alleged—but it has not show[n]—that the pleader is entitled to relief.'" *Id.* (citing *Iqbal*, 556 U.S. at 679). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

19. The Adversary Complaint includes five counts:

- *Count I – Declaration that the Chang Tokens are not Property of the Bankruptcy Estate – 11 U.S.C. § 541(d);*
- *Count II – Imposition of Constructive Trust;*
- *Count III – Conversion;*
- *Count IV (In the Alternative) – Estimation and Allowance of Claim — 11 U.S.C. §§ 105 and 502(a) and (c); and*
- *Count V (In the Alternative) – Recharacterization and Allowance of Crypto Loss Claim as a Class 4 Claim – 11 U.S.C. §§ 105 and Federal Rule of Bankruptcy Procedure 9006(b)(1).*

20. Each of these counts fails to state a claim upon which relief can be granted, and, accordingly, should be dismissed pursuant to Rule 12(b)(6).

**a. Title to the Tokens Passed to the Debtors Upon Transfer.**

21. Mr. Chang asserts that the Tokens are not property of the estate pursuant to section 541(d) of the Bankruptcy Code. "Property held by a debtor is presumed to be property of the estate." *In re Prime Core Techs.*, 673 B.R. 148, 173 (Bankr. D. Del. 2025) (quoting *Asurion Ins. Servs., Inc. v. Kings Road Inv. Ltd. (In re Amp'd Mobile, Inc.)*, 377 B.R. 478, 489 (Bankr. D. Del. 2007)); *see also Jordan v. Beskrone (In re Prehired LLC)*, 677 B.R. 807, 816 (Bankr. D. Del. 2025) (holding that the vesting of property in the bankruptcy estate is self-actuating and automatic upon the petition date). Notably, the facts pled in the Adversary Complaint concede that the Tokens were transferred to the Debtors and thus became property of the estate under section 541(a). Section 541(a) of the Bankruptcy Code broadly defines property of the estate to include "all legal or equitable interests of the debtor in property as of the commencement of the case" wherever located and by whomever held. 11 U.S.C. § 541(a)(1). Section 541(a)(1) is intended to be broad and sweeps in all interests the debtor holds in property as of the petition date, subject only to narrowly defined exceptions. Courts have held that "a 'transferee' has 'dominion over the money or other asset, the right to put the money to one's own purposes.'" *Cleveland-Cliffs Burns Harbor LLC v. Boomerang Tube, LLC*, 2023 WL 5688392 at *13 n.145 (Del. Ch. Sept. 5, 2023) (quoting *In re Hansen*, 341 B.R. 638, 643 (Bankr. N.D. Ill. 2006); citing *In re Ausman Jewelers, Inc.*, 177 B.R. 282, 286 (Bankr. W.D. Wis. 1995))). Moreover, Delaware state law provides that "[t]he first evidence of ownership of personal property is possession . . . [and] [i]f a person is in possession of personal property, holding himself out to others as the owner and acting as the owner, the presumption of the law is that he is the owner." *See Maryland Credit Finance Corp. v. Campbell*, 195 A. 277, 285 (Del. 1937). Mr. Chang has not pled facts to overcome this

presumption of ownership. Once Mr. Chang voluntarily transferred the Tokens to a Debtor-controlled wallet, any interest that the Debtors acquired in the Tokens became property of the estate upon the Petition Date. Mr. Chang's alleged subjective intent to send the Tokens elsewhere does not undo the legal effect of the consummated transfer or retroactively exclude the Tokens from the Estate.

22. By Mr. Chang's own allegations, the Debtors had possession and control of the Tokens prepetition and used them in the ordinary course of their business prior to the bankruptcy. Section 541(d) provides an exception to section 541(a)(1) for "[p]roperty in which the debtor holds . . . only legal title and not an equitable interest . . . becomes property of the estate . . . only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold." 11 U.S.C. § 541(d). To successfully assert a claim that an asset is not property of the estate under section 541(d), the movant must establish that the debtor held only bare legal title to the property without any equitable interest whatsoever as of the commencement of the bankruptcy case. *See Goldberg v. South East Partners Corp. (In re Sturman)*, 222 B.R. 694, 714 (Bankr. S.D.N.Y. 1998). The movant bears the burden of proving complete absence of equitable interest—a very high bar. *See Condren v. Harrison (In re Borison)*, 226 B.R. 779, 785 (Bankr. S.D.N.Y. 1998) (requiring the movant to make a "facially sufficient showing" to support exclusion of property from the debtor's estate under section 541(d)).

23. Mr. Chang conclusorily asserts that, at the Petition Date, the Debtors held only "bare legal title" to the Tokens within the meaning of section 541(d). To the contrary, his factual allegations demonstrate that the Debtors exercised dominion over the Tokens for their own business purposes once in their possession. *See* Adversary Complaint, ¶¶ 22–23. Moreover, this claim hinges on his assertion that the transfer was "inadvertent" and that he "did not intend" to

transfer the Tokens to the Debtors. *See* Adversary Complaint, ¶¶ 17–21, 28-29. Mr. Chang acknowledges that the transfer was completed, the Debtors used the Tokens in connection with their business, and then he waited years—well after the Petition Date and confirmation of the Plan—to seek a declaration that the Tokens were never property of the estate. His own factual assertions defeat the bare legal conclusion in the Adversary Complaint, and accordingly, the section 541(d) count should be dismissed for failure to state a claim.

**b. The Adversary Complaint Does Not Allege Sufficient Facts to Succeed on a Claim for Constructive Trust or Conversion.**

24. In connection with his assertion that the Tokens are not property of the estate, Mr. Chang requests imposition of a constructive trust or conversion. Like his request for a declaration that the Tokens are not property of the estate under section 541(d), his requests for imposition of a constructive trust and conversion are improper.

25. A constructive trust is an extraordinary equitable remedy that may be imposed only where necessary to prevent unjust enrichment arising from fraud, breach of fiduciary duty, or comparable inequitable conduct. *See Adams v. Jankouskas*, 452 A.2d 148, 152 at n.4 (Del. Sup. Ct. 1982). Moreover, "[u]nder Delaware law . . . 'a constructive trust is proper when defendant's *fraudulent conduct* causes him to be unjustly enriched at the expense of another to who[m] *he owed some duty*.'" *Halperin v. Moreno (In re Green Field Energy Services, Inc.)*, 610 B.R. 760, 776 (D. Del. 2019) (emphasis added) (quoting *Ruggiero v. Estate of Poppiti*, 2005 WL 517967, at *3 (Del. Ch. Feb. 23, 2005)). Mr. Chang has not pled fraudulent conduct by the Debtors, nor has he pled a duty owed to him by the Debtors. Accordingly, constructive trust is not an appropriate remedy under Delaware law.

26. Even accepting Mr. Chang's factual allegations as true, the Adversary Complaint does not plausibly allege the elements necessary to warrant the imposition of a constructive trust

over Estate assets. While Mr. Chang asserts that the Debtors were "enriched" and that he was "impoverished" in the amount of $2,199,337.00, such conclusory allegations merely restate his asserted injury. The Debtors obtained the Tokens through Mr. Chang's own unilateral transfer to the Debtors—not through fraud, breach of fiduciary duty, or other egregious misconduct. Mr. Chang does not even allege that the Debtors caused or induced him to make the transfer. Further, the Adversary Complaint fails to plausibly allege a lack of justification for the Debtors' retention and use of the Tokens. By Mr. Chang's own account, the Debtors received the Tokens via a completed blockchain transaction unilaterally initiated by Mr. Chang, and the Debtors then applied them in connection with their routine business activities. Those alleged uses are fully consistent with the Debtors' business model and do not suggest the kind of inequitable conduct that necessitates imposition of a constructive trust.

27. Further, Mr. Chang's conversion theory is incompatible with his allegations regarding his transfer and the Debtors' use of the Tokens. "A plaintiff bringing a claim for conversion must show: it held an interest in the property, it had a right to possession of the property and the defendant converted the property thereby depriving plaintiff of control of the property." *SNMP Research Int'l, Inc. v. Nortel Networks Inc. (In re Nortel Networks Inc.)*, 2013 WL 6500224, at *7 (Bankr. D. Del. Dec. 10, 2013).

28. Here, Mr. Chang's own allegations defeat his conversion claim. He admits that he voluntarily initiated the transfer of the Tokens and that the Debtors received the Tokens via that transfer. *See* Adversary Complaint, ¶¶ 17–21. His allegation establishes that the Debtors came into possession of the Tokens lawfully, as a result of his own transaction. At most, Mr. Chang contends that the Debtors later wrongfully refused to reverse the economic consequences of that completed transfer. But the Adversary Complaint does not contain any specific facts to

demonstrate that he retained a present right to immediate possession once the transfer was completed, much less when he alleges the Debtors integrated the Tokens into their business operations. In addition, conversion is a claim directed at the wrongful exercise of dominion over specific, identifiable property. Yet the allegations contained in the Adversary Complaint indicate that, shortly after the transfer, the Debtors used the Tokens in a series of transactions that altered their character and form. *See* Adversary Complaint, ¶ 22. Plaintiff does not plausibly allege that any discrete, identifiable property remains in the Debtors' or the Plan Administrator's possession that could support a conversion claim.

29. Because the Adversary Complaint does not allege facts sufficient to dispute that the Debtors maintained legal and equitable ownership of the Tokens at all relevant times, Mr. Chang's claims for declaration of property of the estate, constructive trust, and conversion should be dismissed.

## IV. Mr. Chang's Request for Estimation and Allowance is Procedurally Improper in this Adversary Proceeding.

30. As discussed above, Mr. Chang's claim should be governed by the Crypto Loss Claim Procedures, not this Adversary Proceeding. More specifically, his request for estimation and allowance of the Chang Crypto Loss Claim in count IV of the Adversary Complaint is inconsistent with Bankruptcy Rules 7001 and 9014. As explained above, Bankruptcy Rule 7001 governs what may be an adversary proceeding, and a claims dispute is not among the enumerated list in that rule. Moreover, Bankruptcy Rule 9014(a) provides that "relief must be requested by motion" for all contested matters, and the notes of the Advisory Committee on Rules explicitly provides that a "contested matter initiated by an objection to a claim is governed by [Bankruptcy R]ule 9014. . ." *See e.g., Off. Comm. of Asbestos Claimants v. Asbestos Prop. Damage Comm. (In re Fed.-Mogul Glob., Inc.)*, 330 B.R. 133, 136 (D. Del. 2005) (recognizing an estimation

proceeding concerning claims as a "contested matter" under Bankruptcy Rule 9014). Accordingly, his request for estimation and allowance of his Crypto Loss Claim through this Adversary Proceeding is improper.

31. On the merits of his Crypto Loss Claim, the Plan Administrator has reviewed the evidence Mr. Chang submitted in support of Chang's Crypto Loss Claim and determined that his transactions resulted in a net gain of at least $1,834,602.56, not a loss. Accordingly, his request for estimation and allowance of his Crypto Loss Claim in the amount of $2,199,337.00 should be dismissed.

## V. Recharacterization of the Chang Crypto Loss Claim as a General Unsecured Claim Is Improper.

32. Recharacterization of the Chang Crypto Loss Claim as a General Unsecured Claim is improper because Mr. Chang did not file a Proof of Claim by the General Bar Date and because it would be an end run around the Crypto Loss Claim Procedures.

33. First, Mr. Chang's asserted loss is a crypto loss properly pursued under the Crypto Loss Claim Procedures. His claim is for the alleged loss of TerraClassicUSD tokens which clearly meets the definition of Crypto Loss Claim[5] as a transfer of Terra Crypto:[6] It arises from his purchase of TerraClassicUSD (plainly "Terra Crypto," as such coin was created by the Debtors).

---

[5] Pursuant to the Plan, "*Crypto Loss Claim*" means any Claim asserted against the Debtors arising from (a) the purchase, sale, or rescission of the purchase or sale of Cryptocurrency, including (i) Terra Crypto, (ii) any wrapped or bridged version on any blockchain of any Terra Crypto, (iii) any staked or bonded Terra Crypto on any blockchain, (iv) any Terra Crypto on any centralized or decentralized liquidity, lending, or borrowing application or protocol on any blockchain, (v) any receipt or derivative of any Terra Crypto on any blockchain, (vi) any derivatives trading or perpetual swaps of Terra Crypto, or any other Cryptocurrency that derives a value from Terra Crypto, and (vii) any other Cryptocurrency that was transacted or made available on the TerraLunaClassic and TerraLuna blockchains, and (b) any reimbursement or contribution claims allowed under section 502 of the Bankruptcy Code on account of such claims. *Plan*, Section 1.38.

[6] Pursuant to the Plan, "*Terra Crypto*" means any Cryptocurrency issued, created, generated, minted, promoted by or otherwise associated with the Company and its Affiliates, the Terra Ecosystem, or any decentralized or centralized application or protocol on the TerraLunaClassic and TerraLuna blockchains, including Anchor (ANC), Bonded Assets (bLUNA and bETH), Mirror (MIR), Mirror Assets (mAssets), TerraLunaClassic (LUNC),

34. In any event, as explained above, Mr. Chang did not preserve his right to pursue a General Unsecured Claim because he did not file a Proof of Claim by the General Bar Date. As discussed above, Bankruptcy Rule 3003(c)(2) and the Bar Date Order require that a Proof of Claim be timely filed prior to the bar date in order to recover on account of a claim against a debtor. *See* Bar Date Order, ¶ 7. Moreover, Mr. Chang only seeks recharacterization of the Chang Crypto Loss Claim as a General Unsecured Claim because he understands he will not recover under the Chang Crypto Loss Claim—and rightfully so, as he did not incur a net economic loss as a result of the collapse of Terraform. Allowing Mr. Chang to recharacterize his Crypto Loss Claim as a General Unsecured Claim would be an end run around both the Bar Date Order (which required that he file a claim by the General Bar Date, which he did not do) and the Crypto Loss Claim Procedures (which deny his recovery because he is a "net winner" who profited on a net basis by nearly $2 million, even counting the loss of these Tokens).

35. This Court has previously ruled that a claim for a crypto loss must be pursued under the Crypto Loss Claim Procedures and cannot be recharacterized as a General Unsecured Claim. *See Order Denying Motion Requesting Reconsideration of Claim Expungement for Leave to File Late Crypto Loss Claims* [Docket No. 1210]. Under the circumstances underlying that order, the claimant timely filed a General Unsecured Claim which was later expunged and the claimant only sought reinstatement of his General Unsecured Claim because his alleged loss, just like Mr. Chang's, did not meet the definition of Eligible Loss Cryptocurrency such that he could not receive an Allowed Crypto Loss Claim. Allowing Mr. Chang to recover his alleged crypto loss beyond the confines of the Crypto Loss Claim Procedures as a General Unsecured Claim, when

---

Wrapped Luna (wLUNA), TerraClassicUSD (USTC), TerraLuna (LUNA), and Liquidity Pool (LP) tokens on TerraLunaClassic and TerraLuna decentralized exchanges. *Plan*, Section 1.117.

he has not timely filed a Proof of Claim, would introduce inconsistency into the Plan Administrator's claim reconciliation process and allow an end run around the Crypto Loss Claim Procedures.

## CONCLUSION

36. For the reasons set forth herein, the Plan Administrator requests that the Court grant the Motion to Dismiss and dismiss all causes of action asserted against it in the Adversary Complaint for failure to state a claim upon which relief can be granted, and grant such other relief as is just and proper.

Dated: July 20, 2026
Wilmington, Delaware

*/s/ Zachary I. Shapiro*
**RICHARDS, LAYTON & FINGER, P.A.**
Zachary I. Shapiro (No. 5103)
Alexander R. Steiger (No. 7139)
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone: (302) 651-7700
Email: shapiro@rlf.com
steiger@rlf.com

*Co-Counsel for the Defendant*

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Christopher T. Greco, P.C. (admitted *pro hac vice*)
Elizabeth Helen Jones (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
Email christopher.greco@kirkland.com
elizabeth.jones@kirkland.com

-and-

Michael F. Williams, P.C. (admitted *pro hac vice*)
1301 Pennsylvania Ave., NW
Washington, DC 20004
Telephone: (202) 389-5000
Facsimile: (202) 389-5200
Email: michael.williams@kirkland.com

-and-

Christopher S. Koenig (admitted *pro hac vice*)
Casey McGushin (admitted *pro hac vice*)
333 West Wolf Point Plaza
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
Email chris.koenig@kirkland.com
casey.mcgushin@kirkland.com

*Co-Counsel for the Defendant*