**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>TERRAFORM LABS PTE. LTD., *et al.*,<br><br>Post-Effective Date Debtors. | Chapter 11<br><br>Case No. 24-10070 (BLS)<br><br>(Jointly Administered) |
| JOHNNY CHANG<br><br>Plaintiff,<br>vs.<br><br>TERRAFORM LABS PTE. LTD. WIND DOWN TRUST,<br>Defendant. | **Re: Adv. Docket No. 8**<br><br>Adv. Pro. No. 26-50229 (BLS) |

**ANSWERING BRIEF OF JOHNNY CHANG IN OPPOSITION TO PLAN ADMINISTRATOR'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

**JOYCE, LLC**
Michael J. Joyce (No. 4563)
1225 King Street, Suite 800
Wilmington, DE 19801
Telephone: (302) 388-1944
Email: mjoyce@mjlawoffices.com

*Counsel to Johnny Chang*

Dated: September 17, 2026

# <u>Table of Contents</u>

**Page**

NATURE AND STAGE OF PROCEEDINGS ........................................................................1

SUMMARY OF ARGUMENT ........................................................................................1

STATEMENT OF FACTS ..............................................................................................2

MOTION TO DISMISS STANDARD..............................................................................3

ARGUMENT ..............................................................................................................4

I. <u>This Adversary Proceeding Is Proper Under Bankruptcy Rule 7001</u>.................................4

II. <u>The General Bar Date Does Not Require Dismissal of Counts I Through III.</u> ..................8

A. Count I Does Not Assert a "Claim" Subject to the General Bar Date...........................8

B. Even If Plaintiff's Asserted Rights Are Treated as Claims, the General Bar Date Expressly Excluded Broadly Defined Terra-Related Crypto Claims. ............................9

C. Neither the Plan Nor the Later Crypto Loss Claim Procedures Retroactively Subjected Excluded Crypto Claims to the Expired General Bar Date. ........................................11

III. <u>The First Amended Complaint States Claims Upon Which Relief May Be Granted.</u> ......12

A. Count I Plausibly Alleges That Plaintiff Retained an Equitable Interest in the Chang Tokens That Is Excluded From the Estate Under Section 541(d). ..............................12

1. Possession of the Chang Tokens Does Not Establish the Debtors' Beneficial Ownership as a Matter of Law.............................................................................12

2. The Completed Blockchain Transfer and the Debtors' Subsequent Use of the Tokens Do Not Defeat Count I. ...........................................................................15

3. The Plan Administrator Improperly Converts Plaintiff's Ultimate Burden of Proof Into a Pleading Requirement. ................................................................................17

B. Count II Plausibly Supports Imposition of a Constructive Trust. ...............................18

C. Count III Plausibly States a Claim for Conversion. ....................................................22

IV. <u>Count V Should Not Be Dismissed; If Plaintiff Holds a Bankruptcy Claim, the Pleadings Plausibly Support Class 4 Treatment</u>. ..................................................................25

V. <u>Count IV Applies Only If the Court Determines That Plaintiff's Claim Falls Within Plan Section 1.38.</u> ...........................................................................................................28

CONCLUSION..............................................................................................................30

**Table of Authorities**

**Page(s)**

**Cases**

*Allied Dev. of Ala. LLC v. Forever 21, Inc. (In re Forever 21, Inc.),*
623 B.R. 53 (Bankr. D. Del. 2020) .......... 5-7

*Arnold v. Soc'y for Sav. Bancorp, Inc.,*
678 A.2d 533 (Del. 1996) .......... 22

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) .......... 3

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007) .......... 3

*Butner v. United States,*
440 U.S. 48 (1979) .......... 13

*Cleveland-Cliffs Burns Harbor LLC v. Boomerang Tube, LLC,*
2023 WL 5688392 (Del. Ch. Sept. 5, 2023) .......... 16

*Condren v. Harrison (In re Borison),*
226 B.R. 779 (Bankr. S.D.N.Y. 1998) .......... 17

*Connelly v. Lane Constr. Corp.,*
809 F.3d 780 (3d Cir. 2016) .......... 4

*East Lake Methodist Episcopal Church, Inc. v. Trs. of Peninsula-Delaware Annual Conf. of United Methodist Church, Inc.,*
731 A.2d 798 (Del. 1999) .......... 14

*Ellison v. Ditech Fin., LLC (In re Ditech Holding Corp.),*
2025 WL 1537869 (Bankr. S.D.N.Y. May 29, 2025) .......... 6

*Equity Title of Nev. v. Aegis Wholesale Corp. (In re Aegis Mortg. Corp.),*
385 B.R. 102 (Bankr. D. Del. 2008) .......... 6, 13

*Fowler v. UPMC Shadyside,*
578 F.3d 203 (3d Cir. 2009) .......... 4

*Goldberg v. South East Partners Corp. (In re Sturman),*
222 B.R. 694 (Bankr. S.D.N.Y. 1998) .......... 17

*Halperin v. Moreno (In re Green Field Energy Servs., Inc.),*
610 B.R. 760 (D. Del. 2019), *aff'd*, 834 F. App'x 695 (3d Cir. 2020) .......... 19

*Hogg v. Walker,*
622 A.2d 648 (Del. 1993) .......... 21

*Home Ins. Co. v. Honaker,*
480 A.2d 652 (Del. 1984) .......... 19

*In re Ben Franklin Hotel Assocs.*,
186 F.3d 301 (3d Cir. 1999)........................................................................................8

*In re Burlington Coat Factory Sec. Litig.*,
114 F.3d 1410 (3d Cir. 1997)......................................................................................4

*In re Drexel Burnham Lambert Grp., Inc.*,
148 B.R. 993 (S.D.N.Y. 1992)................................................................................5, 7

*In re Ephedra Prods. Liab. Litig.*,
329 B.R. 1 (S.D.N.Y. 2005)..........................................................................................7

*In re Johns-Manville Corp.*,
53 B.R. 346 (Bankr. S.D.N.Y. 1985)......................................................................5, 7

*In re Maxus Energy Corp.*,
No. 16-11501 (CTG), 2023 Bankr. LEXIS 2117 (Bankr. D. Del. Aug. 28, 2023)..................26

*In re Trans World Airlines, Inc.*,
145 F.3d 124 (3d Cir. 1998)........................................................................................26

*Lernout & Hauspie Speech Prods., N.V. v. Baker (In re Lernout & Hauspie Speech Prods., N.V.)*,
264 B.R. 336 (Bankr. D. Del. 2001) ..........................................................................29

*Mastellone v. Argo Oil Corp.*,
82 A.2d 379 (Del. 1951) ......................................................................................22, 23

*Off. Comm. of Asbestos Claimants v. Asbestos Prop. Damage Comm. (In re Federal-Mogul Glob., Inc.)*,
330 B.R. 133 (D. Del. 2005)........................................................................................29

*Off. Comm. of Unsecured Creditors v. Catholic Diocese of Wilmington, Inc. (In re Catholic Diocese of Wilmington, Inc.)*,
432 B.R. 135 (Bankr. D. Del. 2010) ....................................................................13, 17

*Off. Comm. of Unsecured Creditors v. Columbia Gas Sys., Inc. (In re Columbia Gas Sys., Inc.)*,
997 F.2d 1039 (3d Cir. 1993)......................................................................................13

*Off. Comm. of Unsecured Creditors v. The Nature's Bounty Co. (In re Pack Liquidating LLC)*,
Adv. Proc. No. 23-50572 (CTG), D.I. 38 (Bankr. D. Del. July 16, 2024) ..................15–16, 18

*Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*,
*507 U.S. 380 (1993)*.....................................................................................................*27*

*Principal Growth Strategies, LLC v. AGH Parent LLC*,
2024 Del. Ch. LEXIS 17 (Del. Ch. Jan. 25, 2024) ..........................................19, 21

*Scott v. Aegis Mortg. Corp. (In re Aegis Mortg. Corp.)*,
2008 WL 2150120 (Bankr. D. Del. May 22, 2008)..............................................5, 7

*Slobodian v. United States (In re Net Pay Solutions, Inc.)*,
822 F.3d 144 (3d Cir. 2016)........................................................................................14

*SNMP Research Int'l, Inc. v. Nortel Networks Inc. (In re Nortel Networks Inc.)*,
2013 Bankr. LEXIS 5170 (Bankr. D. Del. Dec. 10, 2013).....................................24

*Ventura v. Circle Internet Financial, LLC*,
2025 Del. Super. LEXIS 403 (Del. Super. Aug. 18, 2025) ....................................................20

*Wayman Fire Prot., Inc. v. Premium Fire & Sec., LLC*,
2014 Del. Ch. LEXIS 33 (Del. Ch. Mar. 5, 2014) ............................................................23, 24

**Statutes**

11 U.S.C. § 101(5) .................................................................................................................8

11 U.S.C. § 541(d) .........................................................................1, 2, 4, 6, 8, 12-13, 16-18

**Rules**

Fed. R. Bankr. P. 3007(b) .........................................................................................................7

Fed. R. Bankr. P. 7001 ........................................................................................................ 1, 4-8

Fed. R. Bankr. P. 7008 ...............................................................................................................9

Fed. R. Bankr. P. 7012 ............................................................................................................1, 3

Fed. R. Bankr. P. 9006(b)(1).....................................................................................................27

Fed. R. Bankr. P. 9014 .........................................................................................................28, 29

Fed. R. Civ. P. 8(d)(2)–(3) .........................................................................................................9

Fed. R. Civ. P. 12(b)(6)..........................................................................................1, 3, 15, 17–18

## NATURE AND STAGE OF PROCEEDINGS

1. Plaintiff commenced this Adversary Proceeding on April 3, 2026 and filed the First Amended Complaint on June 2, 2026 [Adv. D.I. 1, 4]. The First Amended Complaint asserts five counts arising from Plaintiff's inadvertent transfer of 2,246,480 TerraClassicUSD tokens to a Debtor-controlled wallet: (I) a declaration under section 541(d) that Plaintiff's equitable interest in the Chang Tokens is not property of the estate; (II) imposition of a constructive trust; (III) conversion; (IV) in the alternative, estimation and allowance of Plaintiff's timely filed Crypto Loss Claim; and (V) in the alternative, recharacterization and allowance of that claim as a Class 4 General Unsecured Claim. On July 20, 2026, the Plan Administrator moved under Federal Rule of Civil Procedure 12(b)(6), made applicable by Bankruptcy Rule 7012, to dismiss the First Amended Complaint in its entirety [Adv. D.I. 8] (the "Motion") and filed its Memorandum of Law in Support of the Motion [Adv. D.I. 9] (the "Opening Memorandum"). This is Plaintiff's answering brief in opposition to that Motion.

## SUMMARY OF ARGUMENT

2. The Plan Administrator incorrectly treats the First Amended Complaint as an ordinary claims dispute. Counts I and II seek determinations concerning property interests and equitable relief expressly contemplated by Bankruptcy Rule 7001. The alternative claim-based relief in Counts IV and V does not transform Counts I and II into claims objection proceedings.

3. The General Bar Date also does not require dismissal. Count I principally asserts a retained equitable property interest, not merely a right to payment. And if Plaintiff's rights are treated as claims, the Bar Date Notice expressly excluded broadly defined Terra-related crypto claims. Nothing in the later Plan or CLC Procedures retroactively subjected those excluded claims to the expired General Bar Date.

4. Counts I through III are plausibly pleaded. Plaintiff alleges that he owned the Chang Tokens, mistakenly transferred them to the Debtors rather than an unrelated third party, notified the Debtors approximately three minutes later, repeatedly demanded return, and that the Debtors, despite acknowledgement of the mistaken transfer, thereafter used the Tokens. Those allegations plausibly support a retained equitable interest under section 541(d), unjust enrichment and constructive-trust relief, and conversion. Defendant's contrary arguments depend on resolving disputed issues and competing inferences against Plaintiff at the pleading stage.

5. If Counts I–III fail and Plaintiff's asserted rights are treated as a bankruptcy claim, Count V plausibly supports Class 4 treatment. Section 1.38 reaches claims "arising from" a cryptocurrency purchase, sale, or rescission, but the pleaded liability arises from the later mistaken transfer, retention, and use of Tokens Plaintiff already owned. The General Bar Date exclusion and timely protective filing preserve Plaintiff's ability to seek the correct classification. At minimum, Defendant cannot establish on the pleadings that the claim necessarily falls within section 1.38.

6. Count IV applies only if the Court determines that Plaintiff's claim falls within Plan section 1.38. Defendant acknowledges that Plaintiff timely filed, disputed the $0.00 Initial Determination, and submitted Supplemental Evidence still under review when the Motion was filed. Plaintiff's protective filing did not concede CLC classification. If the CLC Procedures govern, Count IV should be deferred or dismissed without prejudice—not adjudicated on the merits before that process is complete.

## STATEMENT OF FACTS

7. On May 23, 2021, Plaintiff owned 2,246,480 TerraClassicUSD tokens (the "Chang Tokens"), alleged to be worth $2,199,337.00. Am. Compl. ¶¶ 17–18. He intended to transfer them

to an unrelated third-party wallet but mistakenly transferred them to a Debtor-controlled wallet after leaving the Terra Wallet Address open in his browser. Id. ¶ 19.

8. Plaintiff alleges that he discovered the mistake approximately three minutes later, immediately sought return of the Chang Tokens, and ultimately sent eight return requests. Id. ¶¶ 20–21. Approximately five hours after the transfer and after receiving notice, the Debtors allegedly used a portion of the Tokens for their own DeFi transactions. Id. ¶¶ 22–23. In email correspondence with Plaintiff, the Debtors later acknowledged the mistaken deposit but did not return the Tokens. Id. ¶ 24.

9. The Court established August 9, 2024 as the General Bar Date, but the approved notice expressly excluded "Excluded Crypto Claims," including "[a]ny claims against the Debtors arising from or relating to any digital assets" within specified Terra-related categories. Notice of Bar Dates [Main Case D.I. 444] at 2, 4. The Notice stated that the exclusion was "intended to be interpreted broadly to cover all crypto-related claims concerning Terra." Id. at 4. A separate process and later bar date were subsequently established for Plan-defined Crypto Loss Claims.

10. Plaintiff timely filed a Crypto Loss Claim on May 16, 2025. Am. Compl. ¶ 25. After a $0.00 Initial Determination, he timely disputed it and submitted Supplemental Evidence that remained under review pending a Final Determination when the Motion was filed. Id. ¶ 26; Opening Mem. at 3–4. Defendant expressly acknowledges that Plaintiff timely preserved the Crypto Loss Claim. Opening Mem. at 8 n.4.

## MOTION TO DISMISS STANDARD

11. Federal Rule of Civil Procedure 12(b)(6), made applicable by Bankruptcy Rule 7012, tests the legal sufficiency of the First Amended Complaint. To survive dismissal, a complaint must plead sufficient factual matter, accepted as true, to state a claim that is plausible on its face.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In applying that standard, the Court disregards legal conclusions but must assume the remaining factual allegations are true, construe them in the light most favorable to the plaintiff, and draw all reasonable inferences in the plaintiff's favor. *Connelly v. Lane Construction Corp.*, 809 F.3d 780, 790 (3d Cir. 2016); *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009). The issue at this stage "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *In re Burlington Coat Factory Securities Litigation*, 114 F.3d 1410, 1420 (3d Cir. 1997). Accordingly, the Court may not resolve genuine factual disputes against Plaintiff or credit Defendant's competing factual characterization over a reasonable inference plausibly supported by the well-pleaded allegations.

## ARGUMENT

### I. THIS ADVERSARY PROCEEDING IS PROPER UNDER BANKRUPTCY RULE 7001.

12. The Plan Administrator's threshold argument rests on an overbroad characterization of the First Amended Complaint as a "claims dispute." *See* Opening Mem. at 7–8. Although Counts IV and V seek alternative relief concerning allowance and classification of Plaintiff's asserted claim, Counts I and II seek fundamentally different relief. Count I asks the Court to determine whether Plaintiff or the Debtors held the equitable interest in specifically identified property as of the Petition Date and, consequently, whether that property ever became property of the bankruptcy estate under section 541(d). Count II seeks equitable relief in the form of a constructive trust. Am. Compl. ¶¶ 27–39. Those proceedings fall squarely within the categories expressly enumerated in Bankruptcy Rule 7001.

13. Rule 7001 provides that an adversary proceeding includes, among other things, "a proceeding to recover money or property," Fed. R. Bankr. P. 7001(a); "a proceeding to determine the validity, priority, or extent of a lien or other interest in property," Fed. R. Bankr. P. 7001(b); "a proceeding to obtain an injunction or other equitable relief," Fed. R. Bankr. P. 7001(g); and "a proceeding to obtain a declaratory judgment related to" any such proceeding, Fed. R. Bankr. P. 7001(i). Count I seeks precisely such a determination: whether the Chang Tokens and their proceeds are property of the estate or instead remain subject to Plaintiff's equitable ownership interest. Count II seeks related equitable relief. The fact that Plaintiff alternatively asserts claims against the estate in Counts IV and V does not transform the property-rights claims in Counts I and II into claims objection proceedings.

14. The Delaware Bankruptcy Court's decision in *Allied Development of Alabama LLC v. Forever 21, Inc. (In re Forever 21, Inc.)*, 623 B.R. 53 (Bankr. D. Del. 2020), is particularly instructive. There, as here, the debtors argued that the plaintiff's adversary complaint was procedurally improper because the asserted causes of action arose prepetition and ultimately sought recovery from the debtors, and therefore had to proceed exclusively through the claims-reconciliation process. *Id.* at 59–62. The court considered authorities including *Scott v. Aegis Mortgage Corp.*, *In re Drexel Burnham Lambert Group, Inc.*, and *In re Johns-Manville Corp.*—authorities on which the Plan Administrator likewise relies here. The court rejected the proposed categorical rule, explaining that "[n]othing in the express language of Rule 7001 prohibits" resolving a prepetition claim for damages in the adversary process and that Rule 7001 "simply lists claims that must be prosecuted as adversary proceedings." *Forever 21*, 623 B.R. at 60–61. Thus, Rule 7001 identifies proceedings that must be brought as adversary proceedings; it does not establish an exclusive universe of matters that may be adjudicated in an adversary proceeding.

15. *Forever 21* is even more directly on point with respect to Count I. One count there sought a declaratory judgment that certain insurance policies were not property of the bankruptcy estate. The court held that the requested determination "clearly" related to a proceeding to determine an interest in property under then-Rule 7001(2) and therefore was expressly required to proceed as an adversary proceeding under then-Rule 7001(9). *Forever 21*, 623 B.R. at 62. Those subdivisions have since been restyled as Rules 7001(b) and 7001(i), respectively, without a change material here. Count I presents the same type of estate-boundary question: whether the Debtors possessed the equitable interest in the Chang Tokens such that the Tokens or their proceeds entered the estate under section 541, or whether that equitable interest remained with Plaintiff.

16. This Court has previously treated materially similar litigation in precisely that manner. In *Equity Title of Nevada v. Aegis Wholesale Corp. (In re Aegis Mortgage Corp.)*, 385 B.R. 102 (Bankr. D. Del. 2008) (Shannon, J.), this Court considered an adversary complaint whose Count I sought a declaration that a loan and its proceeds were not property of the debtor's estate and whose Count II sought a constructive trust over related proceeds. The Court held that a determination whether property belongs to the bankruptcy estate is a core proceeding and denied dismissal of Count I. *Id. See Equity Title*, 385 B.R. at 108 & n.5 (holding that a request to determine whether property is estate property presents a core proceeding and noting, while expressly reserving the constructive-trust issue, that property held subject to a constructive trust is excluded from the estate under § 541(d)).

17. The Plan Administrator's authorities do not compel a different result. *Ellison v. Ditech Financial, LLC (In re Ditech Holding Corp.)*, 2025 WL 1537869 (Bankr. S.D.N.Y. May 29, 2025), involved plaintiffs who had filed a $386,000 proof of claim and subsequently sought the same $386,000 in monetary relief in an adversary proceeding after the claim had been

disallowed and expunged. The court emphasized that the adversary proceeding sought "primarily monetary relief" duplicating the previously adjudicated claim. *Id.* at *11. That is materially different from Count I in the present matter, which asks the Court to adjudicate the antecedent question whether the estate owns the disputed equitable interest at all.

18. Likewise, *Scott*, *Drexel*, *Johns-Manville*, and *Ephedra* do not compel dismissal. See *Scott v. Aegis Mortgage Corp. (In re Aegis Mortgage Corp.)*, 2008 WL 2150120, at *6 (Bankr. D. Del. May 22, 2008); *DBL Liquidating Trust v. P.T. Tirtamas Majutama (In re Drexel Burnham Lambert Group, Inc.)*, 148 B.R. 993, 998 (S.D.N.Y. 1992); *Dade County School District v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 53 B.R. 346, 352–55 (Bankr. S.D.N.Y. 1985); *In re Ephedra Products Liability Litigation*, 329 B.R. 1, 7–8 (S.D.N.Y. 2005). Those decisions generally directed ordinary prepetition damages claims into the claims allowance process. But *Forever 21*, after considering that same line of authority, expressly rejected the proposition that those decisions establish a per se rule against resolving a prepetition damages claim in an adversary proceeding. *Forever 21*, 623 B.R. at 60–61. Here, Defendant's characterization of Count I as a claim for "damages stemming from prepetition conduct" simply assumes the disputed premise: that the Debtors beneficially owned the Chang Tokens and Plaintiff therefore holds only a claim against them. See Opening Mem. at 7–8. Count I alleges the opposite—that Plaintiff retained the equitable property interest and the Debtors held no such interest. That property-ownership question must be resolved before Plaintiff can be relegated to creditor status with respect to the disputed property.

19. Nor do Counts IV and V render the adversary proceeding procedurally defective. Bankruptcy Rule 3007(b) itself provides that although a demand for Rule 7001 relief may not be included in a claim objection, an objection to a claim may be included in an adversary proceeding. Fed. R. Bankr. P. 3007(b). Thus, the Rules expressly contemplate that claims-related issues and

Rule 7001 relief may coexist in the same adversary proceeding. *Forever 21*, 623 B.R. at 60. Whether the alternative relief pleaded in Counts IV and V must ultimately be adjudicated under claims reconciliation or the Crypto Loss Claim Procedures is a separate question; it provides no basis to dismiss Counts I and II, which independently fall within Rule 7001.

20. Accordingly, the Plan Administrator's request to dismiss the Adversary Proceeding as procedurally improper under Rule 7001 should be denied.

## II. THE GENERAL BAR DATE DOES NOT REQUIRE DISMISSAL OF COUNTS I THROUGH III.

### A. Count I Does Not Assert a "Claim" Subject to the General Bar Date.

21. The Plan Administrator's bar-date argument more fundamentally assumes the premise disputed by Count I. Count I does not seek allowance of a prepetition claim or a distribution from the estate on account of such a claim. It seeks a determination that Plaintiff retained an equitable interest in specifically identified property that never became property of the estate under section 541(d). Am. Compl. ¶¶ 27–31. Plaintiff's primary position therefore is that the General Bar Date does not apply to Count I in the first instance. *See* infra Part III.

22. Plaintiff's precautionary submission of a Crypto Loss Claim, and his pleading of alternative relief in Counts IV and V, do not concede that Count I asserts a bankruptcy "Claim." Count I, on its primary theory, falls within neither prong of section 101(5). It does not assert a "right to payment" under section 101(5)(A); rather, it seeks a determination that Plaintiff retained the legal and equitable interest in the Chang Tokens and their proceeds and that such interest therefore never became property of the estate under section 541(d). Am. Compl. ¶¶ 27–31. The declaratory relief sought in Count I also does not constitute a "right to an equitable remedy for breach of performance" that gives rise to a right to payment under section 101(5)(B). 11 U.S.C. §

101(5)(B). Count I does not seek an equitable remedy for breach of a performance obligation that can alternatively be satisfied by monetary payment. See *In re Ben Franklin Hotel Assocs.*, 186 F.3d 301, 305, 307–08 (3d Cir. 1999) (holding that an equitable demand for reinstatement of a partnership interest was not a "claim" where monetary damages were not an alternative to the equitable remedy). Rather, it seeks adjudication of the antecedent property-ownership question whether Plaintiff retained an equitable interest in property that the Debtors never beneficially owned. The fact that Plaintiff separately preserved claim-based relief in the alternative does not transform that primary ownership theory into a bankruptcy claim.

23. The First Amended Complaint expressly pleads Counts IV and V—the counts seeking estimation, allowance, and recharacterization of a bankruptcy claim—only in the alternative. Count IV provides that, "[t]o the extent this Court would deny the relief sought by Mr. Chang in Counts I–III," Plaintiff seeks estimation and allowance of his timely filed Crypto Loss Claim. Am. Compl. ¶ 55. Count V likewise seeks alternative relief if Plaintiff does not prevail on his primary property-rights theories. *Id.* ¶¶ 56–65. Such alternative and even inconsistent pleading is expressly permitted. Fed. R. Civ. P. 8(d)(2)–(3), made applicable by Fed. R. Bankr. P. 7008. Plaintiff therefore need not concede at the pleading stage that he is merely a creditor holding a prepetition right to payment in order to preserve alternative claim-based relief if the Court ultimately rejects his property-ownership theories.

### B. Even If Plaintiff's Asserted Rights Are Treated as Claims, the General Bar Date Expressly Excluded Broadly Defined Terra-Related Crypto Claims.

24. The Notice of Bar Dates approved pursuant to the Bar Date Order expressly provided that the Bar Dates "do not apply to the excluded claims . . . including, without limitation, the Excluded Crypto Claims." Notice of Bar Dates [Main Case D.I. 444] at 2 (the "Bar Date

Notice"). The Notice then defined "Excluded Crypto Claims" to include "[a]ny claims against the Debtors arising from or relating to any digital assets," including an extensive enumeration of claims relating to Terra Crypto and the Terra ecosystem. *Id.* at 4. Lest there be any uncertainty concerning the scope of the exclusion, the Notice expressly provided that "[t]he definition of Excluded Crypto Claims is intended to be interpreted broadly to cover all crypto-related claims concerning Terra." *Id.* Plaintiff's asserted rights concern 2,246,480 TerraClassicUSD tokens allegedly transferred by mistake to a Debtor-controlled wallet. Am. Compl. ¶¶ 17–24. Thus, to the extent those asserted rights constitute "claims" at all, they fall within the plain language of the crypto-related claims expressly excluded from the General Bar Date. The same is true of Counts II and III: to the extent the Plan Administrator characterizes those causes of action as bankruptcy "claims," they arise from or relate to the same allegedly mistaken transfer and retention of TerraClassicUSD and therefore fall within the Bar Date Notice's broadly defined Excluded Crypto Claims category.

25. The Debtors themselves described the General Bar Date Order in precisely those terms shortly after the August 9, 2024 deadline expired. In their First Omnibus Objection, the Debtors explained that the General Bar Date was subject to "certain exclusions" and that "[s]pecifically excluded from application of the General Bar Date were 'Excluded Crypto Claims,' as defined in the Claims Bar Date Order." Debtors' First Omnibus Objection [Main Case D.I. 619] ¶ 7. The Plan Administrator's Opening Memorandum does not address that broad exclusion. Instead, it characterizes the persons exempt from the General Bar Date as "claimants asserting a Crypto Loss Claim." Opening Mem. at 8. Those are not the same defined terms. "Excluded Crypto Claims" was the broader category used in the General Bar Date regime, whereas "Crypto Loss Claim" is a subsequently defined term under the Plan. The distinction is material to the Plan

Administrator's contention that Plaintiff was required to file a general Proof of Claim by August 9, 2024.

### C. Neither the Plan Nor the Later Crypto Loss Claim Procedures Retroactively Subjected Excluded Crypto Claims to the Expired General Bar Date.

26. Nothing in the Plan Administrator's Opening Memorandum identifies a provision of the Plan that retroactively subjected an Excluded Crypto Claim to the already-expired General Bar Date. The Plan instead established a prospective, separate claims process for Crypto Loss Claims. Section 5.7 expressly provides that "[t]he General Bar Date Order did not establish any bar date with respect to Crypto Loss Claims" and directs that a later Crypto Loss Claim Bar Date be established by motion and notice for claim-allowance and distribution purposes. Second Amended Chapter 11 Plan of Liquidation of Terraform Labs Pte. Ltd. and Terraform Labs Limited [Main Case D.I. 717] § 5.7 (the "Plan"). The Plan further provides that holders of Crypto Loss Claims must file proofs of claim in accordance with those subsequently approved procedures or be barred from asserting such Claims against the Wind Down Trust. *Id.* § 4.5(b). Nothing in those provisions states that a crypto-related claim previously excluded from the General Bar Date becomes retroactively subject to the August 9, 2024 deadline if its ultimate classification is disputed.

27. The Plan Administrator thereafter obtained approval of the Crypto Loss Claim Procedures and a separate Crypto Loss Claim Bar Date, which was ultimately extended through May 16, 2025. See Notice of Extension of Crypto Loss Claims Bar Date Until May 16, 2025 [Main Case D.I. 986]. Plaintiff timely submitted his Crypto Loss Claim on May 16, 2025, a fact the Plan Administrator expressly acknowledges. Am. Compl. ¶ 25; Opening Mem. at 3–4. Accordingly, if—as the Plan Administrator argues elsewhere in its Opening Memorandum—Plaintiff's asserted

loss “clearly meets the definition of Crypto Loss Claim,” Opening Mem. at 15, the Plan Administrator cannot rely on the General Bar Date to bar that asserted loss. Under the Plan Administrator’s own characterization, the separate Crypto Loss Claim regime applies, and Plaintiff timely complied with the applicable filing deadline.

28. The Plan Administrator's position fails from either direction. If Plaintiff's primary allegations are accepted, Count I presents a property-ownership dispute over an equitable interest alleged never to have entered the estate. If those rights instead constitute a claim, the General Bar Date broadly excluded Terra-related crypto claims and the Plan later created a separate CLC deadline. The Opening Memorandum identifies no provision requiring Plaintiff to have filed a protective general Proof of Claim by August 9, 2024 for rights then expressly excluded from that deadline.

29. Accordingly, the General Bar Date supplies no basis to dismiss Counts I–III. Count I principally asserts a proprietary interest allegedly excluded from the estate; Counts II and III, if treated as claims, arise from the same TerraClassicUSD transaction covered by the broad Excluded Crypto Claims carveout. And if the asserted loss is a Crypto Loss Claim, as Defendant contends, Plaintiff timely complied with the later CLC Bar Date.

## III. THE FIRST AMENDED COMPLAINT STATES CLAIMS UPON WHICH RELIEF MAY BE GRANTED.

### A. Count I Plausibly Alleges That Plaintiff Retained an Equitable Interest in the Chang Tokens That Is Excluded From the Estate Under Section 541(d).

1. <u>Possession of the Chang Tokens Does Not Establish the Debtors' Beneficial Ownership as a Matter of Law.</u>

30. The Plan Administrator begins from a proposition Plaintiff need not dispute: property in a debtor's possession is presumptively property of the bankruptcy estate. *See* Opening

Mem. at 10–11. But a presumption arising from possession does not resolve the question presented by Count I. Section 541(d) expressly provides that where a debtor possesses legal title but not an equitable interest in property, the property enters the estate only to the extent of the debtor's legal title and not to the extent of an equitable interest the debtor does not hold. 11 U.S.C. § 541(d). The Third Circuit accordingly explains that the “classic definition of a trust” is one in which “the beneficiary has an equitable interest in the trust property while legal title is vested in the trustee,” and recognizes that, where the debtor holds only legal title to property in trust, the property is excluded from the estate to the extent of the beneficiary's equitable interest. *Official Comm. of Unsecured Creditors v. Columbia Gas Sys., Inc. (In re Columbia Gas Sys., Inc.)*, 997 F.2d 1039, 1059 (3d Cir. 1993). This Court has likewise recognized that property held by a debtor subject to a constructive trust is excluded from the estate under section 541(d). *Equity Title*, 385 B.R. at 108 n.5 (Shannon, J.).

31. The critical question therefore is not simply whether the Debtors possessed or exercised control over the Chang Tokens, but what interest the Debtors acquired in the Tokens under applicable nonbankruptcy law. *See Butner v. United States*, 440 U.S. 48, 54–55 (1979). For purposes of the present Motion, both sides invoke Delaware law in addressing the ownership and equitable-interest issues: the First Amended Complaint invokes Delaware law for the related trust theory, while the Plan Administrator relies upon Delaware law for its possession-based ownership argument. Delaware law therefore supplies, at a minimum, a viable nonbankruptcy-law basis for Plaintiff's asserted equitable interest. Nothing in the Opening Memorandum identifies a materially different body of law that forecloses that interest as a matter of law.

32. Delaware law recognizes that possession or nominal title does not necessarily carry the beneficial interest. In *Official Committee of Unsecured Creditors v. Catholic Diocese of*

*Wilmington, Inc. (In re Catholic Diocese of Wilmington, Inc.)*, 432 B.R. 135 (Bankr. D. Del. 2010), the court applied Delaware law and held that a resulting trust arises where property is transferred under circumstances supporting the inference that the transferor did not intend the recipient to receive the beneficial interest. *Id.* at 148–49 (citing *East Lake Methodist Episcopal Church, Inc. v. Trustees of Peninsula-Delaware Annual Conference of United Methodist Church, Inc.*, 731 A.2d 798, 809 (Del. 1999)). The court rejected an unduly narrow limitation on that doctrine and explained that the governing inquiry concerns the transferor's intent and the circumstances of the disposition. The Third Circuit has likewise observed that, under resulting-trust principles, circumstances demonstrating “no intention” to give the recipient the beneficial interest may leave the recipient with only bare legal title. *Slobodian v. United States (In re Net Pay Solutions, Inc.)*, 822 F.3d 144, 158–59 & n.13 (3d Cir. 2016).

33. The First Amended Complaint alleges detailed facts supporting the critical inference that the Debtors were not intended to receive the beneficial interest in the Chang Tokens. Plaintiff owned 2,246,480 TerraClassicUSD tokens and intended to transfer them to an unrelated third party. Am. Compl. ¶¶ 17–19. He mistakenly sent them to the Terra Wallet Address only because he had inadvertently left that address open in his browser. *Id.* ¶ 19. Within approximately three minutes, Plaintiff discovered the error and demanded that the Debtors return the Tokens; he thereafter sent a total of eight messages requesting their return. *Id.* ¶¶ 20–21. The Debtors nevertheless allegedly used a portion of the Tokens several hours later for their own DeFi transactions, and subsequently acknowledged that the transfer had resulted from a mistake. *Id.* ¶¶ 22–24. These are factual allegations. They are not merely the legal conclusion that Plaintiff retained an equitable interest and they plausibly rebut any inference of beneficial ownership arising merely from the Debtors' possession.

34. At the pleading stage, nothing more is required. Whether Plaintiff can ultimately establish the existence and extent of his equitable interest, and trace that interest into the Tokens or their proceeds, are questions of proof. They do not permit the Court to disregard the well-pleaded allegations demonstrating why the Debtors' possession allegedly arose from mistake rather than an intended conveyance of beneficial ownership.

2. The Completed Blockchain Transfer and the Debtors' Subsequent Use of the Tokens Do Not Defeat Count I.

35. The Plan Administrator principally argues that Plaintiff's own allegations defeat Count I because the blockchain transfer was completed and the Debtors thereafter "exercised dominion over the Tokens for their own business purposes." Opening Mem. at 11–12. That argument conflates the Debtors' ability to exercise control over property with their legal entitlement to its beneficial ownership.

36. The Delaware Bankruptcy Court recently rejected materially similar reasoning at the Rule 12(b)(6) stage in *Official Committee of Unsecured Creditors v. The Nature's Bounty Co. (In re Pack Liquidating LLC)*, Adv. Proc. No. 23-50572 (CTG), D.I. 38, Mem. Op. at 8–10 (Bankr. D. Del. July 16, 2024). There, the debtor mistakenly overpaid the defendant by $500,000. The recipient argued that the relevant transfer necessarily occurred when it received the money. Judge Goldblatt held that the argument "assume[d] its conclusion" because it failed to address the antecedent question of when the recipient actually acquired an interest in the mistaken overpayment. Applying the same legal-sufficiency standard governing Rule 12(b)(6), the court accepted the mistake allegations as true and concluded that general property and restitution principles supported the inference that the recipient held the mistakenly transferred funds in constructive trust until it subsequently applied them to its own invoices. *Id.* at 8–10.

37. *Pack* is particularly instructive here. If mistaken receipt of funds itself necessarily vested the recipient with the entire beneficial interest, there would have been no retained property interest for the transferor in *Pack*. Instead, the court held that the mistaken transferor plausibly retained a property interest notwithstanding the recipient's possession, and treated the recipient's later application of the funds as a separate legally significant event. The same reasoning defeats the Plan Administrator's categorical contention that Plaintiff's admitted completion of the blockchain transaction necessarily extinguished his equitable interest.

38. Notably, the allegations here are stronger in one significant respect. Plaintiff alleges that he advised the Debtors of the mistake approximately three minutes after the transfer and before the Debtors' alleged use of the Tokens. Am. Compl. ¶¶ 20–22. The Debtors' subsequent exercise of dominion after receiving notice of Plaintiff's claimed ownership does not retroactively establish that Plaintiff intended to convey beneficial ownership when the transaction occurred. At most, it raises factual questions regarding the disposition of Plaintiff's alleged property interest and its proceeds—questions that cannot be resolved against Plaintiff on a motion to dismiss.

39. The Plan Administrator's reliance on *Cleveland-Cliffs Burns Harbor LLC v. Boomerang Tube, LLC*, 2023 WL 5688392, at *13 n.145 (Del. Ch. Sept. 5, 2023), does not bridge that gap. *See* Opening Mem. at 10. The quoted "dominion" language addresses whether a recipient qualifies as a transferee for purposes of fraudulent-transfer law. That concept does not establish that a recipient who obtains physical control over mistakenly transferred property thereby acquires every beneficial interest in it. Section 541(d) itself demonstrates why the concepts cannot be equated: it expressly contemplates circumstances in which the debtor possesses legal title to property while another party owns the equitable interest.

3. The Plan Administrator Improperly Converts Plaintiff's Ultimate Burden of Proof Into a Pleading Requirement.

40. The Plan Administrator also relies upon *Goldberg v. South East Partners Corp. (In re Sturman)*, 222 B.R. 694, 714–15 (Bankr. S.D.N.Y. 1998), and *Condren v. Harrison (In re Borison)*, 226 B.R. 779 (Bankr. S.D.N.Y. 1998), in contending that Plaintiff ultimately must establish that the Debtors lacked the disputed equitable interest. Opening Mem. at 11. In *Sturman*, the court held section 541(d) inapplicable because the debtors held legal title, majority partnership interests, and the corresponding beneficial interests in the property. 222 B.R. at 714–15. That substantive determination does not alter the Rule 12(b)(6) standard.

41. Neither *Sturman* nor *Borison* supports a heightened pleading burden. Both were decided on summary judgment. *Sturman* resolved the ownership issue by interpreting deeds and a written partnership agreement whose existence and contents were undisputed. 222 B.R. at 704–06, 710–15. In *Borison*, the court's "facially sufficient showing" language concerned the adequacy of notices of lis pendens, and equitable ownership had already been conclusively established by a prepetition judgment. 226 B.R. at 784–87. Neither decision addressed what a complaint must allege to plausibly invoke section 541(d).

42. Delaware authority illustrates the distinction. *Catholic Diocese* was decided after an evidentiary proceeding and recognized that the purported beneficiaries ultimately bore the burden of establishing the trust relationship and tracing their property. 432 B.R. at 147–48. The court nevertheless first found that a resulting trust did exist under Delaware law because the circumstances demonstrated that the transferors did not intend the debtor to obtain beneficial ownership. Id. at 148–49. The beneficiaries' eventual inability to trace the trust property, other than one party's funds, was a separate evidentiary problem that ultimately caused those funds to be

treated as property of the estate. Id. at 159–62. The existence of an ultimate burden therefore does not mean that a plaintiff must prove his case in his complaint at the pleadings stage.

43. *Pack* makes the pleading/proof distinction especially clear. Because futility depended upon whether the proposed complaint would survive Rule 12(b)(6), Judge Goldblatt expressly accepted the factual allegations as true and declined to conduct an evidentiary adjudication of matters that would later have to be proven. Plaintiff's allegations here comfortably cross that threshold: they identify the property, Plaintiff's prior ownership, the intended destination as an unrelated third-party wallet, the mistaken destination, the precise transaction, immediate notice and demand for return, the Debtors' subsequent use, and their alleged later acknowledgement of the mistake.

44. Accordingly, Plaintiff has alleged far more than the “bare legal conclusion” the Plan Administrator attributes to Count I. Accepting those allegations as true and drawing reasonable inferences in Plaintiff's favor, it is at least plausible that the Debtors obtained possession of the Chang Tokens without acquiring Plaintiff's equitable interest in them. Section 541(d) therefore states a viable basis for determining that Plaintiff's equitable interest did not become property of the bankruptcy estate, and Count I should not be dismissed.

**B. Count II Plausibly Supports Imposition of a Constructive Trust.**

45. Count II plausibly alleges unjust enrichment and facts supporting the equitable relief requested. The First Amended Complaint alleges that the Debtors were enriched by the Inadvertent Transfer; Plaintiff was correspondingly impoverished; the enrichment and impoverishment arose from the same transfer; the Debtors lacked justification to retain the Chang Tokens or their proceeds after learning of the mistake; and Plaintiff lacks an adequate remedy at law. Am. Compl. ¶¶ 33–39. Those allegations adequately plead Delaware’s unjust-enrichment

framework and further allege the absence of an adequate remedy at law, supporting Plaintiff's request for constructive-trust relief. See *Principal Growth Strategies, LLC v. AGH Parent LLC*, 2024 Del. Ch. LEXIS 17, at *32–34 (Del. Ch. Jan. 25, 2024); *Halperin v. Moreno (In re Green Field Energy Servs., Inc.)*, 610 B.R. 760, 775–78 (D. Del. 2019), *aff'd*, 834 F. App'x 695, 697–98 (3d Cir. 2020).

46. The Plan Administrator nevertheless argues that constructive-trust relief is unavailable because Plaintiff does not allege that the Debtors fraudulently induced the transfer or owed Plaintiff a fiduciary or other duty. Opening Mem. at 12–13. Delaware law does not impose that categorical requirement. In *Principal Growth*, the Court of Chancery rejected at the pleading stage the contention that constructive-trust relief requires a confidential or fiduciary relationship. The court explained that "[a] constructive trust is the typical remedy for an unjust enrichment claim when specific property can be identified, regardless of whether or not there was a fiduciary relationship between the parties," and concluded that the defendants had supplied no basis for rejecting that potential remedy, adding that "[t]he court need not go any further at the pleading stage." *Principal Growth Strategies, LLC v. AGH Parent LLC*, 2024 Del. Ch. LEXIS 17, at *55–56 (Del. Ch. Jan. 25, 2024).

47. Plaintiff likewise was not required to allege that the Debtors caused his original mistake. Delaware's Supreme Court has long recognized that money transferred under a mistake of fact may be recoverable in equity under an unjust-enrichment theory. *Home Insurance Co. v. Honaker*, 480 A.2d 652, 653–55 (Del. 1984). *Honaker* involved a unilateral mistake unknown to the recipient when the payments were made, yet the court held that unilateral mistake does not categorically bar restitution; instead, the circumstances of the mistake, the parties' conduct, and whether retention of the benefit would be unjust remain relevant. *Id.* at 654–55. Although *Honaker*

ultimately denied restitution because the innocent recipient had spent the overpayments and materially changed his position before learning of the mistake, 480 A.2d at 655, Plaintiff alleges the opposite circumstance here: the Debtors were notified of the mistake within approximately three minutes and allegedly used the Tokens only hours thereafter. Plaintiff's responsibility for initiating the mistaken blockchain transaction therefore does not, as a matter of law, establish that the Debtors were entitled to retain the resulting benefit. A recent Delaware decision confirms that a mistaken blockchain transfer is not categorically fatal to an unjust-enrichment claim arising from the transfer. In *Ventura v. Circle Internet Financial, LLC*, the plaintiff's 511,435 USDC tokens were "successfully transferred to the Incorrect Wallet" because of an erroneous Ethereum address. 2025 Del. Super. LEXIS 403, at *2 (Del. Super. Aug. 18, 2025). The court nevertheless denied dismissal of the unjust-enrichment claim, holding that whether the defendant was enriched, whether that enrichment was related to the erroneous transfer, and whether retention was justified required factual development. *Id.* at *4–6.

48. The well-pleaded allegations concerning what occurred after the transfer make dismissal particularly inappropriate. Plaintiff alleges that he discovered the error approximately three minutes after sending the Chang Tokens, immediately informed the Debtors of the mistake and requested their return, and ultimately sent eight return requests. Am. Compl. ¶¶ 19–21. Approximately five hours after the initial transfer—and after Plaintiff had allegedly provided notice of the mistake—the Debtors allegedly used a portion of the Chang Tokens in DeFi transactions for their own benefit. *Id.* ¶¶ 22–23. Plaintiff further alleges that the Debtors subsequently acknowledged that the transfer had resulted from a mistake but still did not return the Tokens. *Id.* ¶ 24. Those allegations readily support a plausible inference that the Debtors' continued retention and use of the Tokens lacked justification.

49. The Plan Administrator's competing characterization of that conduct as merely consistent with the Debtors' "routine business activities," Opening Mem. at 13, does not resolve the issue at the pleading stage. The relevant question is not whether the Debtors routinely engaged in DeFi transactions, but whether they were justified in using these particular Tokens after receiving immediate notice that the transfer was mistaken and repeated demands for their return. Delaware law treats competing explanations for an alleged enrichment as matters that may be tested on a developed record rather than grounds for dismissal where absence of justification has been plausibly alleged. *Principal Growth*, 2024 Del. Ch. LEXIS 17, at *32–34.

50. Those same allegations plausibly preserve constructive-trust relief. Delaware law recognizes a constructive trust as a flexible equitable remedy designed to prevent unjust enrichment and relating to specific property or identifiable proceeds of specific property. See *Hogg v. Walker*, 622 A.2d 648, 652 (Del. 1993); *Principal Growth*, 2024 Del. Ch. LEXIS 17, at *54–56. Plaintiff identifies the property at issue with specificity—the 2,246,480 Chang Tokens and their proceeds—and alleges that neither the Debtors nor the Trust possessed an ownership interest entitling them to retain that property. Am. Compl. ¶¶ 18, 29, 34–39. Whether Plaintiff ultimately can establish the requisite equitable entitlement and trace the Chang Tokens into particular proceeds presents a question of proof and remedy. It does not justify eliminating constructive-trust relief at the pleading stage. See *Principal Growth*, 2024 Del. Ch. LEXIS 17, at *54–56.

51. Count II therefore should not be dismissed. Accepting the pleaded facts as true, Plaintiff plausibly alleges that the Debtors received his Tokens by mistake, learned almost immediately that he claimed ownership and demanded their return, and nevertheless retained and used them for their own benefit. Delaware law does not make fraud, inducement, or a fiduciary relationship categorical prerequisites to the equitable theory pleaded here. Whether the evidence

ultimately warrants imposition of a constructive trust is properly addressed on a developed record, not resolved against Plaintiff on a motion to dismiss.

**C. Count III Plausibly States a Claim for Conversion.**

52. Count III plausibly alleges each element of conversion under Delaware law. A plaintiff must allege that, at the time of the alleged conversion, he held a property interest in the property, had a right to possession, and the defendant exercised wrongful dominion over the property. *Arnold v. Society for Savings Bancorp, Inc.*, 678 A.2d 533, 536 (Del. 1996). Conversion consists of dominion wrongfully exercised over another's property in denial of, or inconsistent with, the owner's rights. *Id.* Count III alleges that Plaintiff remained the legal and equitable owner of the Chang Tokens and that the Debtors and the Trust wrongfully exercised dominion and control over those Tokens and their proceeds. Am. Compl. ¶¶ 40–44. Those allegations incorporate the detailed facts supporting Plaintiff's asserted ownership and right to possession discussed above. See supra Part III.A. The Plan Administrator cannot obtain dismissal of Count III by assuming, contrary to those well-pleaded allegations, that completion of the mistaken transfer necessarily extinguished Plaintiff's property interest.

53. The fact that the Debtors may initially have obtained possession innocently does not defeat conversion. Where possession is initially lawful, a demand and refusal may be necessary to establish conversion; where the possessor has already consumed, sold, destroyed, or otherwise disposed of the property, *Mastellone* holds that no demand is required. *Mastellone v. Argo Oil Corp.*, 82 A.2d 379, 383–84 (Del. 1951). Here, Plaintiff alleges both an immediate demand for return and subsequent use of a portion of the Tokens. He discovered the mistaken transfer within approximately three minutes, immediately demanded return of the Chang Tokens, ultimately sent

eight return requests, and the Debtors thereafter used a portion of the Tokens for their own transactions. Am. Compl. ¶¶ 19–24.

54. The Plan Administrator therefore places undue weight on the fact that Plaintiff himself initiated the blockchain transaction. See Opening Mem. at 13–14. Even assuming that fact made the Debtors' original receipt lawful, the alleged conversion did not have to occur at the instant of receipt. The First Amended Complaint specifically alleges that the Debtors' unlawful conversion began at approximately 4:57 a.m.—when Plaintiff discovered the error and demanded the Tokens' return—and that the Debtors thereafter continued to exercise dominion over the Tokens and their proceeds. Am. Compl. ¶¶ 20–24, 40–44. Whether Plaintiff retained the ownership interest and corresponding right to possession necessary to support that demand presents the same disputed property-rights question addressed in Count I; it cannot be resolved against Plaintiff merely by characterizing the original transfer as "completed."

55. The Plan Administrator's further contention that the Debtors' later use of the Chang Tokens defeats conversion because the Tokens allegedly changed "character and form" fares no better. Opening Mem. at 14. Under Delaware law, a possessor's subsequent disposition of property may itself establish conversion without any further demand for return. Mastellone, 82 A.2d at 383–84. The Court of Chancery likewise held, in the context of electronically stored information, that modification and use of computer files could deny the owner's rights in those files and support conversion liability. Wayman Fire Protection, Inc. v. Premium Fire & Security, LLC, 2014 Del. Ch. LEXIS 33, at *85–87 (Del. Ch. Mar. 5, 2014). Thus, accepting Plaintiff's allegations as true, the Debtors' alleged use of the Chang Tokens after notice of Plaintiff's ownership claim supports, rather than defeats, a plausible conversion theory.

56. The Plan Administrator's reliance on *SNMP Research International, Inc. v. Nortel Networks Inc. (In re Nortel Networks Inc.)*, 2013 Bankr. LEXIS 5170, at *26 (Bankr. D. Del. Dec. 10, 2013), does not support dismissal here. *Nortel* involved an inadequately pleaded claim concerning software: the court emphasized that the plaintiff had failed to identify the allegedly converted property or plead facts supporting the conversion elements, and its discussion of software as intangible property relied on federal decisions applying Pennsylvania law. *Id.* The allegations here are markedly different. Plaintiff identifies the allegedly converted property as 2,246,480 TerraClassicUSD Tokens, identifies the precise transfer and receiving wallet, alleges his prior ownership and intended recipient, and specifies the time of his demand and the Debtors' subsequent use of the Tokens. Am. Compl. ¶¶ 17–24, 40–44. Moreover, shortly after *Nortel*, the Delaware Court of Chancery rejected as "devoid of legal or logical support" the argument that the tort of conversion is inapplicable to electronically stored information. *Wayman*, 2014 Del. Ch. LEXIS 33, at *85.

57. Count III therefore should not be dismissed. Plaintiff plausibly alleges that he retained a property interest in and right to possession of specifically identified Chang Tokens; that he demanded their return almost immediately after the mistaken transfer; and that the Debtors thereafter retained and used the Tokens in a manner inconsistent with his asserted ownership rights. Whether Plaintiff ultimately proves that retained property interest is a merits question shared with Count I. At the pleading stage, the Plan Administrator cannot convert its disputed ownership premise—or the Debtors' alleged subsequent disposition of the property—into a basis for dismissing the conversion claim.

## IV. COUNT V SHOULD NOT BE DISMISSED; IF PLAINTIFF HOLDS A BANKRUPTCY CLAIM, THE PLEADINGS PLAUSIBLY SUPPORT CLASS 4 TREATMENT.

58. Count V presents the threshold classification issue if Counts I–III fail: whether Plaintiff's asserted bankruptcy claim falls within Plan section 1.38 or qualifies as a Class 4 General Unsecured Claim. Am. Compl. ¶¶ 56–65. Count IV becomes relevant only if section 1.38 governs. The pleadings support Class 4 treatment because the alleged liability arises from the later mistaken transfer, retention, and use of the Tokens—*not from their purchase, sale, or rescission*. Defendant cannot establish CLC classification merely because the transferred property was TerraClassicUSD.

59. The Plan Administrator conflates the property involved in the claim with the conduct giving rise to it. The Plan defines a "Crypto Loss Claim" as a Claim "arising from (a) the purchase, sale, or rescission of the purchase or sale of Cryptocurrency," followed by categories of cryptocurrency to which that operative language applies. Plan § 1.38. The Opening Memorandum instead says Plaintiff's claim "clearly meets" the definition "as a transfer of Terra Crypto" and "[a]rises from his purchase" of TerraClassicUSD. Opening Mem. at 15–16. The Amended Complaint does not allege Plaintiff "purchased" TerraClassicUSD and a "transfer of Terra Crypto" is not the Plan's test. The fact that the property mistakenly transferred was TerraClassicUSD does not establish that the asserted liability arose from its purchase or sale. Count V does not depend on any defect in, rescission of, or liability arising from Plaintiff's acquisition of the Tokens. It rests on a separate event: the subsequent mistaken transfer to the Debtors and their alleged retention and use of the Tokens after notice and acknowledgment of the mistake. Am. Compl. ¶¶ 17–24. Defendant therefore has not established as a matter of law that this distinct claim necessarily falls within section 1.38. If it does not, the Plan defines a General Unsecured Claim to

include a prepetition Claim that is neither secured nor entitled to priority and does not fall within an expressly excluded category. Plan §§ 1.67, 4.4.

60. The potential classification gap results from Terraform's sequencing. The August 2024 General Bar Date Notice broadly excluded Terra-related crypto claims, indicating that no general proof was required for the Inadvertent Transfer. Only later did the Plan define a Crypto Loss Claim more narrowly by reference to a cryptocurrency purchase, sale, or rescission. A claim could thus have been excluded from the General Bar Date yet fall outside section 1.38, without a separate Class 4 filing opportunity. Plaintiff timely filed in the later crypto process to preserve his rights—not to concede CLC classification. Am. Compl. ¶¶ 62–65. Defendant cannot turn either the Notice's exclusion or that protective filing into forfeiture.

61. A change in classification does not necessarily constitute a new, untimely claim. The Third Circuit held that the bankruptcy court did not abuse its discretion in allowing an unsecured claim where a timely but ambiguous proof referred to administrative and unsecured-priority treatment and notified the debtor that an unsecured claim had been asserted. *In re Trans World Airlines, Inc.*, 145 F.3d 124, 141 (3d Cir. 1998). *Maxus* similarly explains that a post-bar-date amendment may assert a new legal theory for the same injury or loss, but may not seek damages not fairly encompassed by the timely claim; its scope is determined objectively. *In re Maxus Energy Corp.*, No. 16-11501 (CTG), 2023 Bankr. LEXIS 2117, at *18–21 (Bankr. D. Del. Aug. 28, 2023) (applying an objective-notice inquiry and denying amendment because the proposed damages were not fairly encompassed by the original claim). The First Amended Complaint alleges that Plaintiff's timely filing concerned the same Inadvertent Transfer and $2,199,337 loss asserted in Count V. Am. Compl. ¶¶ 62–65. Taken as true, those allegations

plausibly support alternative classification of the same timely preserved claim rather than a new claim.

62. Bankruptcy Rule 9006(b)(1) provides a further alternative. The First Amended Complaint invokes the Rule and pleads excusable neglect. Am. Compl. ¶¶ 58, 65. Excusable neglect turns on "all relevant circumstances," including prejudice to the debtor, the length and potential impact of the delay, the reason for it—including whether it was within the movant's reasonable control—and good faith. *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993). *Pioneer* also considered the ambiguity of the bar-date notice, the absence of prejudice, and good faith in applying that standard. *Id.* at 397–99. Here, the General Bar Date Notice told holders of broadly defined Terra-related crypto claims that they need not file; Plaintiff later timely filed under the separate crypto process; and the First Amended Complaint alleges good faith. Am. Compl. ¶¶ 62, 65. Taken as true, those allegations warrant consideration under Pioneer's equitable standard.

63. The Plan Administrator's reliance on the Court's April 16, 2026 order concerning Bradley Young does not compel dismissal. See Order Denying Motion Requesting Reconsideration of Claim Expungement for Leave to File Late Crypto Loss Claims [Main Case D.I. 1210]. Young did not present the threshold issue here—whether his underlying claim fell outside Plan section 1.38 in the first instance. He did not dispute that his claim concerned a crypto loss, intentionally pursued a General Unsecured Claim instead, failed to respond to the objection that resulted in its expungement, and declined an offer to have his late Crypto Loss Claim treated as timely. Plan Administrator's Objection [Main Case D.I. 1201] ¶¶ 11–13. Plaintiff, by contrast, disputes CLC classification and timely filed and prosecuted the CLC procedure as a protective

alternative. D.I. 1210 therefore does not resolve how Plaintiff's timely preserved claim should be classified if it falls outside section 1.38.

64. Count V therefore should not be dismissed. If Counts I–III fail and Plaintiff's asserted right is treated as a bankruptcy claim, the pleadings plausibly support treatment as a Class 4 General Unsecured Claim because the alleged liability arises from the subsequent mistaken transfer, retention, and use of the Tokens rather than their purchase, sale, or rescission. At minimum, Plaintiff must be permitted to pursue that classification through the appropriate claims process. Only if the Court ultimately determines that the claim falls within Plan section 1.38 does the protective CLC alternative addressed in Part V govern. If claims reconciliation is the proper vehicle, Count V should be deferred or dismissed without prejudice to pursuing that relief there.

## V. COUNT IV APPLIES ONLY IF THE COURT DETERMINES THAT PLAINTIFF'S CLAIM FALLS WITHIN PLAN SECTION 1.38.

65. Count IV applies only if Counts I–III fail and the Court determines that Plaintiff's claim falls within Plan section 1.38. Am. Compl. ¶ 55. Plaintiff's timely CLC submission preserved that alternative; it did not concede that the mistaken-transfer claim is a Crypto Loss Claim or waive alternative Class 4 treatment. Defendant argues that any CLC relief must proceed through the CLC Procedures and Rule 9014. Opening Mem. at 14–15. Even if so, Count IV should be deferred or dismissed without prejudice—not adjudicated on the merits while that process remains incomplete.

66. Defendant concedes that Plaintiff timely filed on May 16, 2025, received a $0.00 Initial Determination, timely disputed it, and submitted Supplemental Evidence still "under review pending the Plan Administrator's Final Determination." Opening Mem. at 3–4. Defendant also

confirms that Plaintiff timely did what was required to preserve Count IV. Id. at 8 n.4. Thus, the CLC was preserved and not finally determined when the Motion was filed.

67. The CLC Bar Date Order confirms that a timely disputed Initial Determination is not final. A claimant may dispute it within thirty days and submit Supplemental Evidence, after which the Plan Administrator "will provide" a Final Determination. Order (I) Setting the Bar Date for Filing Proofs of Claim on Account of Crypto Loss Claims, (II) Approving the Form of and Manner for Filing Proofs of Claim, (III) Approving the Form and Manner of Notice Thereof, and (IV) Approving Related Procedures [Main Case D.I. 965] ¶¶ 8–9 (the "CLC Bar Date Order"). The claimant then has thirty days to give notice of an intent to object and ninety days from receipt of the Final Determination to object. Id. ¶ 9. Only an accepted Initial or Final Determination becomes "fully binding and irrevocable." Id. ¶ 11.

68. Defendant nevertheless seeks merits dismissal based on its asserted determination that Plaintiff was a net winner. Opening Mem. at 15. That request is premature: the $0.00 amount was only an Initial Determination, Plaintiff timely disputed it, and no Final Determination had issued. Opening Mem. at 3–4; see CLC Bar Date Order ¶¶ 8–9, 11. Defendant cannot insist on completion of the CLC process while treating the disputed Initial Determination as final.

69. Neither procedural authority cited by Defendant supports dismissal on the merits. *Official Committee of Asbestos Claimants v. Asbestos Property Damage Committee* (*In re Federal-Mogul Global, Inc.*), 330 B.R. 133, 136 (D. Del. 2005), proceeded with claims estimation as a contested matter under Bankruptcy Rule 9014; it did not address whether a timely preserved claim may be dismissed on the merits because the claimant invoked a different procedural vehicle. *Lernout & Hauspie Speech Products, N.V. v. Baker* (*In re Lernout & Hauspie Speech Products, N.V.*), 264 B.R. 336, 339–40 (Bankr. D. Del. 2001), overruled a procedural objection and treated

the complaint and related motions as contested matters because the parties had adequate notice and opportunity to respond, no unmet discovery needs, and no disputed facts. The court reasoned that declining to resolve the legal issue on account of the procedural vehicle would "unnecessarily elevate form over substance." *Id.* at 340. Here, there is an additional reason not to reach the merits: Defendant acknowledges that Plaintiff's timely CLC remains in process awaiting a Final Determination.

70. Accordingly, Count IV should not be dismissed on the merits. If Plan section 1.38 ultimately governs and Plaintiff must complete the CLC Procedures before seeking judicial resolution, Count IV should be deferred or dismissed without prejudice to the timely CLC, Plaintiff's right to receive and challenge any Final Determination, and all rights preserved under the Plan and CLC Bar Date Order.

**CONCLUSION**

71. For all of the foregoing reasons, Plaintiff respectfully requests that the Court deny the Motion to Dismiss Counts I through III; deny dismissal of Count V on the merits and, if its requested Class 4 relief must be pursued through claims reconciliation, defer Count V or dismiss it without prejudice to Plaintiff's right to seek that relief through the appropriate procedure; and, only if the claim ultimately falls within Plan section 1.38, deny dismissal of Count IV on the merits and defer Count IV or dismiss it without prejudice to completion of the Crypto Loss Claim Procedures.

Dated: September 17, 2026

**JOYCE, LLC**
*/s/ Michael J. Joyce*
Michael J. Joyce (No. 4563)
1225 King Street, Suite 800
Wilmington, DE 19801
Telephone: (302) 388-1944
Email: mjoyce@mjlawoffices.com
*Counsel to Johnny Chang*