**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| TERRAFORM LABS PTE. LTD., *et al.*,[1] | Case No. 24-10070 (BLS) |
| Post-Effective Date Debtors. | (Jointly Administered) |
| JOHNNY CHANG, | |
| Plaintiff, | Adversary Proceeding No. 26-50229 (BLS) |
| v. | |
| | **Re: Adv. D.I. 1, 4, 6 & 11** |
| TERRAFORM LABS PTE. LTD. WIND DOWN TRUST, | |
| Defendant. | |

**PLAN ADMINISTRATOR'S REPLY IN SUPPORT OF MOTION TO DISMISS THE FIRST AMENDED COMPLAINT FOR DETERMINATION OF PROPERTY OF THE ESTATE PURSUANT TO 11 U.S.C. § 541**

**November 2, 2026**

[1] The Post-Effective Date Debtors in these chapter 11 cases are: Terraform Labs Pte. Ltd. and Terraform Labs Limited. The Post-Effective Date Debtors' principal offices are located at 10 Anson Road, #10-10 International Plaza, Singapore 079903. The Plan Administrator of the Post-Effective Date Debtors is Todd R. Snyder. The Plan Administrator's principal office is located at 1251 Avenue of the Americas, New York, New York 10020.

**RICHARDS, LAYTON & FINGER, P.A.**
Zachary I. Shapiro (No. 5103)
Alexander R. Steiger (No. 7139)
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone: (302) 651-7700
Email: shapiro@rlf.com
steiger@rlf.com

*Co-Counsel for the Defendant*

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Christopher T. Greco, P.C. (admitted *pro hac vice*)
Elizabeth Helen Jones (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
Email christopher.greco@kirkland.com
elizabeth.jones@kirkland.com

-and-

Michael F. Williams, P.C. (admitted *pro hac vice*)
1301 Pennsylvania Ave., NW
Washington, DC 20004
Telephone: (202) 389-5000
Facsimile: (202) 389-5200
Email: michael.williams@kirkland.com

-and-

Christopher S. Koenig (admitted *pro hac vice*)
Casey McGushin (admitted *pro hac vice*)
333 West Wolf Point Plaza
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
Email chris.koenig@kirkland.com
casey.mcgushin@kirkland.com

*Co-Counsel for the Defendant*

## TABLE OF CONTENTS


**Page**

PRELIMINARY STATEMENT ........................................................................................1

REPLY ........................................................................................................................2

I. The Adversary Proceeding Is Barred Either By the General Bar Date or the CLC Bar Date. ..........................................................................................................2

II. The Claim Is Governed by the Crypto Loss Claim Procedures.........................................7

III. The Adversary Complaint Has Not Properly Pled Remedies for Counts I-III. ..................8

A. Count I Does Not Plead a Remedy Available Under Section 541(d). ....................8

B. Count II Does Not Plead the Specific, Traceable Property Required for a Constructive Trust, Nor Is a Constructive Trust a Proper Cause of Action. .........10

C. Count III Seeks Only Money Damages on Account of a Prepetition Claim. ........11

IV. The Adversary Complaint Fails to State a Claim. ..........................................................12

CONCLUSION ............................................................................................................13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 12

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .......... 12

*In re Ben Franklin Hotel Assocs.*,
186 F.3d 301 (3d Cir. 1999) .......... 9

*Rosen v. Chowaiki & Co. Fine Art Ltd. (In re Chowaiki & Co. Fine Art Ltd.)*,
593 B.R. 699 (Bankr. S.D.N.Y. 2018) .......... 9

*CVS Pharm., Inc. v. Forest Labs. Ireland, LTD v. Forest Laboratories Inc. (In re Watson Laboratories, Inc.)*,
101 F.4th 223 (2d Cir. 2024) .......... 12

*Drug, Inc. v. Hunt*,
168 A. 87 (Del. Ch. 1993) .......... 11

*In re Ephedra Prods. Liability Litig.*,
329 B.R. 1 (S.D.N.Y. 2005) .......... 6

*Equity Title of Nev. v. Aegis Wholesale Corp. (In re Aegis Mortg. Corp.)*,
385 B.R. 102 (Bankr. D. Del. 2008) .......... 8

*Goldberg v. N.J. Lawyers' Fund for Client Prot.*,
932 F.2d 273 (3d Cir. 1991) .......... 10

*Gulf Aviation Servs. Grp. WLL v. Wilmington Tr. Co.*,
2023 WL 9118772 (Del. Super. Ct. Dec. 29, 2023) .......... 11

*Halperin v. Moreno (In re Green Field Energy Servs., Inc.)*,
585 B.R. 89 (Bankr. D. Del. 2018) .......... 10

*Halperin v. Moreno (In re Green Field Energy Servs., Inc.)*,
610 B.R. 760 (D. Del. 2019) .......... 12

*Hogg v. Walker*,
622 A.2d 648 (Del. 1993) .......... 10

*In re Johns-Manville Corp.*,
53 B.R. 346 (Bankr. S.D.N.Y. 1985) .......... 6

*Kuroda v. SPJS Holdings, L.L.C.*,
971 A.2d 872 (Del. Ch. 2009)....................11

*Golden v. The Guardian (In re Lenox Healthcare, Inc.)*,
343 B.R. 96 (Bankr. D. Del. 2006)....................8

*Redrock Admin. Servs. LLC v. Magna Ent. Corp. (In re Magna Ent. Corp.)*,
438 B.R. 380 (Bankr. D. Del. 2010)....................8

*Principal Growth Strategies, LLC v. AGH Parent LLC*,
2024 Del. Ch. LEXIS 17 (Del. Ch. Jan. 25, 2024)....................10

*Radnor Holdings Corp. v. PPT Consulting, LLC (In re Radnor Holdings Corp.)*,
2009 WL 2004226 (Bankr. D. Del. July 9, 2009)....................9

*Universal Bonding Ins. Co. v. Gitens & Sprinkle Enters., Inc.*,
960 F.3d 366 (3d Cir. 1992)....................8

**Statutes**

11 U.S.C. § 101(5)....................11

11 U.S.C. § 101(5)(A)....................11

11 U.S.C. § 502....................4, 5

11 U.S.C. § 541(d)....................2, 8, 9

**Rules**

Fed. R. Bankr. P. 7001....................6

Fed. R. Civ. P. 12(b)(6)....................12

## PRELIMINARY STATEMENT

1. The Adversary Proceeding must be dismissed for at least four reasons.

2. ***First***, no matter how Mr. Chang styles his causes of action, the Claim is properly a Crypto Loss Claim, which must be governed by the Crypto Loss Claim Procedures—*i.e.*, through the claims allowance process, not a separate adversary proceeding. His Claim arises from the sale of Cryptocurrency and seeks to recover the alleged $2,199,337.00 value of those Tokens. This Claim is a Crypto Loss Claim, because it is a Claim against the Debtors "arising from . . . the purchase, sale, or rescission of the purchase or sale of Cryptocurrency, including . . . Terra Crypto". Plan, sections 1.38 & 1.117. Mr. Chang recognized as much when he timely submitted the Chang Crypto Loss Claim on account of the very same Tokens and the very same alleged loss.

3. Mr. Chang is pursuing the Adversary Proceeding for one reason: because he now understands that he cannot recover under the Crypto Loss Claim Procedures. This is because he is a "net winner" whose aggregate transactions in Terraform cryptocurrency resulted in a net gain of at least $1,834,602.56—even counting his asserted value of the Tokens as a loss. Accordingly, Mr. Chang received a $0.00 Initial Determination. After receiving this Initial Determination, Mr. Chang commenced the Adversary Proceeding to recover on account of the exact same loss outside the Crypto Loss Claim Procedures. This end-around the Crypto Loss Claim Procedures cannot be countenanced; it would encourage other dissatisfied claimants to likewise pursue alternative relief.

4. ***Second***, the Adversary Proceeding is barred by either the General Bar Date or the Crypto Loss Claim Bar Date. Either the Claim is a General Unsecured Claim that had to be filed by the General Bar Date, or it was a Crypto Loss Claim that had to be filed by the Crypto Loss Claim Bar Date. The Adversary Proceeding was brought after both bar dates, and should not be

permitted to proceed in light of the deadlines that have been enforced for other holders of Crypto Loss Claims.

5. ***Third***, the relief Mr. Chang seeks is improper. Each of the counts alleged seeks the same relief—payment of $2,199,337.00 (the alleged value of the Tokens on the date of their transfer), plus prejudgment interest. But that is not the relief available under the legal theories Mr. Chang pursues. A declaration under section 541(d) and the imposition of a constructive trust are directed at the return of specific property—not a judgment for its historical dollar value—and conversion seeks nothing more than money damages on account of a prepetition claim. If Mr. Chang were entitled to any relief under counts I or II (and he is not), it would be the return of the Tokens themselves. The Plan Administrator could easily return to Mr. Chang an equal number of TerraClassicUSD tokens today. Mr. Chang does not want that relief, however, because the Tokens are effectively worthless today. So instead, he seeks a monetary remedy in their place—and a claim for monetary recovery on account of a prepetition transaction involving Terra Crypto is exactly what a Crypto Loss Claim is.

6. ***Fourth***, as set forth more fully below, the Adversary Complaint does not properly state a claim on which relief can be granted.

7. For these reasons, and as more fully set forth herein, the Adversary Complaint should be dismissed.

## <u>REPLY</u>

### I. The Adversary Proceeding Is Barred Either By the General Bar Date or the CLC Bar Date.

8. The Claim can take only one of two forms, and either way, the Adversary Proceeding should be barred. ***Either*** the Claim is a General Unsecured Claim, in which case it is barred because Mr. Chang did not file a Proof of Claim prior to the General Bar Date, ***or*** the Claim

is a Crypto Loss Claim, in which case it must be resolved through the Crypto Loss Claim Procedures (or was barred because the Adversary Proceeding was also filed after the Crypto Loss Claim Bar Date). In either scenario, the Adversary Proceeding should be dismissed.

9. The first scenario is straightforward. The Plan Administrator's books and records reflect that Mr. Chang did not file a Proof of Claim prior to the August 9, 2024 General Bar Date, and the Adversary Complaint does not plead otherwise. Pursuant to the Bar Date Order, "any holder of a claim who is required to timely file a Proof of Claim on or before the applicable Bar Date, but fails to do so, shall not be treated as a creditor with respect to such claim for the purposes of . . . [a] distribution in the Chapter 11 Cases on account of such claim." Bar Date Order, ¶ 7.

10. The second scenario is equally clear. Mr. Chang timely submitted the Chang Crypto Loss Claim by the CLC Bar Date, received a $0.00 Initial Determination, timely disputed that determination, and submitted Supplemental Evidence that is currently under review. Mr. Chang concedes as much. *See* Response, ¶¶ 10, 66.

11. Unhappy with his Initial Determination, Mr. Chang filed the Adversary Complaint on April 3, 2026, nearly one year after he filed his Crypto Loss Claim form prior to the CLC Bar Date on May 16, 2025, and nearly six months after he received his Initial Determination in November 2025 despite disputing his Initial Determination in December 2025. Accordingly, to the extent the Claim is not a General Unsecured Claim, it is a Crypto Loss Claim that should be governed by the Crypto Loss Claim Procedures, else it is barred by the CLC Bar Date Order.

12. Seeking to avoid both outcomes, Mr. Chang posits a nonexistent third option: a claim that is neither a General Unsecured Claim subject to the General Bar Date nor a Crypto Loss Claim subject to the Crypto Loss Claim Procedures or Crypto Loss Claim Bar Date, but rather an "Excluded Crypto Claim" that was somehow carved out of the General Bar Date yet also falls

outside the Plan's definition of Crypto Loss Claim. *See* Response, ¶¶ 24–29, 60. As Mr. Chang would have it, "[a] claim could thus have been excluded from the General Bar Date yet fall outside section 1.38, without a separate Class 4 filing opportunity." *Id.* ¶ 60. No such category exists. Mr. Chang's argument rests entirely on the fact that the definition of "Excluded Crypto Claims" in the Bar Date Order and the definition of "Crypto Loss Claim" are not worded identically. *See id.* ¶ 25 (arguing that "[t]hose are not the same defined terms"). A review of the two definitions, however, confirms that Excluded Crypto Claims and Crypto Loss Claims refer to the same category of claims.

13. The Bar Date Order defines "Excluded Crypto Claims" as follows: "Any claims against the Debtors arising from or relating to any digital assets, including but not limited to, any claim arising from or relating to the purchase, sale, or rescission of the purchase or sale, of digital assets issued, created, generated, minted, promoted by or otherwise associated with the Debtors and their affiliates, the Terra Ecosystem, or any decentralized or centralized application or protocol on the TerraLunaClassic and TerraLuna blockchains (such digital assets, "Terra Crypto"), any wrapped or bridged version on any blockchain of any Terra Crypto, any staked or bonded Terra Crypto on any blockchain, any Terra Crypto on any centralized or decentralized liquidity, lending, or borrowing application or protocol on any blockchain, any receipt or derivative of any Terra Crypto on any blockchain, any derivatives trading or perpetual swaps of Terra Crypto, or any other digital assets that derive a value from Terra Crypto, and any other digital asset that was transacted or made available on the TerraLunaClassic and TerraLuna blockchains, and any reimbursement or contribution claims allowed under section 502 of the Bankruptcy Code on account of such claims." Bar Date Order, ¶ 5(g).

14. The Plan defines "Crypto Loss Claim" as follows: "'Crypto Loss Claim' means any Claim asserted against the Debtors arising from (a) the purchase, sale, or rescission of the purchase or sale of Cryptocurrency, including (i) Terra Crypto, (ii) any wrapped or bridged version on any blockchain of any Terra Crypto, (iii) any staked or bonded Terra Crypto on any blockchain, (iv) any Terra Crypto on any centralized or decentralized liquidity, lending, or borrowing application or protocol on any blockchain, (v) any receipt or derivative of any Terra Crypto on any blockchain, (vi) any derivatives trading or perpetual swaps of Terra Crypto, or any other Cryptocurrency that derives a value from Terra Crypto, and (vii) any other Cryptocurrency that was transacted or made available on the TerraLunaClassic and TerraLuna blockchains, and (b) any reimbursement or contribution claims allowed under section 502 of the Bankruptcy Code on account of such claims." Plan, section 1.38.

15. Although the two definitions are not identical, they plainly describe the same category of claims. Both "Excluded Crypto Claims" and "Crypto Loss Claims" refer to claims arising from the purchase, sale, or rescission of the purchase or sale of Terra Crypto; both extend to wrapped or bridged, staked or bonded, and derivative Terra Crypto, to Terra Crypto deployed on liquidity, lending, or borrowing protocols, to derivatives trading or perpetual swaps of Terra Crypto, and to any other digital asset that derives a value from Terra Crypto or was transacted or made available on the TerraLunaClassic and TerraLuna blockchains; and both sweep in related reimbursement and contribution claims allowed under section 502 of the Bankruptcy Code. The minor differences in phrasing are insignificant, and any lack of continuity in wording reflects that drafting history, not an intent to create a third category of claims subject to no bar date and no claims process at all.

16. The intent of the Bar Date Order's carve-out of Excluded Crypto Claims was to exclude Crypto Loss Claims from the General Bar Date so that such claims could later be addressed under the Plan and Crypto Loss Claim Procedures that had not yet been drafted—not to create a safe harbor for crypto-related claims to be pursued outside any claims process. The Plan confirms precisely that. Section 5.7 of the Plan provides that "[t]he General Bar Date Order did not establish any bar date with respect to Crypto Loss Claims" and directs that a separate Crypto Loss Claim Bar Date be established, and section 4.5(b) requires holders of Crypto Loss Claims to file proofs of claim in accordance with those subsequently approved procedures or be barred from asserting such Claims against the Wind Down Trust. *See* Plan, sections 4.5(b), 5.7. The Plan Administrator then developed and obtained approval of the Crypto Loss Claim Procedures pursuant to section 5.7 of the Plan. *See* Motion, ¶ 7. Mr. Chang himself treated the Claim accordingly: he submitted the Chang Crypto Loss Claim on account of the very same Tokens and the very same alleged $2,199,337.00 loss asserted in the Adversary Complaint. *See* Adversary Complaint, ¶¶ 25, 49, 62–63; Response ¶ 61.

17. Mr. Chang's attempt to manufacture a third category of claims is an attempt to use Bankruptcy Rule 7001 for a purpose it was never intended to serve. Bankruptcy Rule 7001 enumerates the proceedings that must be brought as adversary proceedings; it does not provide a vehicle for a claimant dissatisfied with the claims reconciliation process to relitigate the amount and classification of his claim in a separate forum. *In re Ephedra Prods. Liability Litig.*, 329 B.R. 1, 7 (S.D.N.Y. 2005) ("'[T]he only appropriate way to assert a claim against a debtor's estate is through the timely filing of a properly executed proof of claim' and not through an adversary proceeding." (quoting *In re Johns-Manville Corp.*, 53 B.R. 346, 354 (Bankr. S.D.N.Y. 1985))). The Adversary Complaint seeks just one form of relief—payment of $2,199,337.00 (the alleged

value of the Tokens on May 23, 2021) plus prejudgment interest. *See* Adversary Complaint, ¶¶ B–E. This relief is not appropriately sought through the Adversary Proceeding and, due to Mr. Chang's failure to file a proof of claim by the General Bar Date and the nature of his loss, can only be resolved in accordance with the Crypto Loss Claim Procedures.

**II. The Claim Is Governed by the Crypto Loss Claim Procedures.**

18. The loss underlying the Claim is 2,246,480 cryptocurrency tokens of TerraClassicUSD. *See* Adversary Complaint, ¶ 17. The Claim is inherently a Crypto Loss Claim "arising from the . . . sale of Cryptocurrency" which must be governed by the Crypto Loss Claim Procedures. *See* Plan, sections 1.38, 1.41. The Plan contemplated establishment of unique crypto loss claim procedures to ensure an orderly and efficient claim reconciliation process. The Adversary Proceeding seeks an end run around that process. Mr. Chang timely filed a Crypto Loss Claim and received a $0.00 Initial Determination because the Plan Administrator's analysis of the evidence he submitted in support of his claim revealed that he is a "net winner" who profited by nearly $2 million from Terraform cryptocurrency (even counting his $2,199,337.00 Claim as a loss, which it is not under the Crypto Loss Claim Procedures). Dissatisfied with that result, he now seeks relief through the Adversary Proceeding on account of the exact same loss.

19. Mr. Chang can attempt to disguise the Claim as one for conversion or constructive trust, or argue that the Tokens were never property of the estate, but none of that changes the nature of the Claim, which arises from the sale of cryptocurrency and falls squarely within the definition of Crypto Loss Claim under the Plan. Allowing the Adversary Proceeding to govern the Claim provides Mr. Chang an alternative path to recovery to which he is not entitled. This result would disregard his nearly $2 million in gains and count the Transfer as a loss rather than a sale, contrary to the Crypto Loss Claim Procedures and at the expense of all other Crypto Loss Claimants.

## III. The Adversary Complaint Has Not Properly Pled Remedies for Counts I-III.

20. Even setting aside that the Claim is barred by the General Bar Date or the Crypto Loss Claim Bar Date, counts I, II, and III also fail because the Adversary Complaint does not plead facts supporting the remedies those counts seek. However styled, each count seeks the same relief: a money judgment of $2,199,337.00, an amount equal to the alleged value of the Tokens on May 23, 2021, plus prejudgment interest. *See* Adversary Complaint, ¶¶ 35–39, 43; Prayer for Relief, ¶¶ B–C. Yet Mr. Chang does not allege that the Tokens, or any identifiable proceeds of the Tokens, remain in the Plan Administrator's possession. To the contrary, he alleges that, within hours of the transfer, the Debtors used the Tokens to liquidate decentralized cryptocurrency loans, purchase loan collateral at a discount, and use that collateral to borrow more capital. *See* Adversary Complaint, ¶¶ 22–23. The remedies associated with counts I and II attach only to specific, identifiable property, and count III, which by its nature seeks money damages, gives rise to nothing more than a prepetition claim for payment, for which the Adversary Proceeding is not a proper means of recovery.

### A. Count I Does Not Plead a Remedy Available Under Section 541(d).

21. A declaration under section 541(d) is a threshold determination—it establishes only whether specific property is excluded from the estate, which is a prerequisite to any further relief. *See Equity Title of Nev. v. Aegis Wholesale Corp. (In re Aegis Mortg. Corp.)*, 385 B.R. 102, 108 (Bankr. D. Del. 2008). And the exclusion it recognizes is a narrow one: property in which a debtor holds only bare legal title is not property of the estate. *See Golden v. The Guardian (In re Lenox Healthcare, Inc.)*, 343 B.R. 96, 100 (Bankr. D. Del. 2006); 11 U.S.C. § 541(d). Where that showing is made, the beneficiaries "may reclaim their equitable interests in the trust fund so created through bankruptcy court proceedings." *Redrock Admin. Servs. LLC v. Magna Ent. Corp. (In re Magna Ent. Corp.)*, 438 B.R. 380, 386–87 (Bankr. D. Del. 2010) (quoting *Universal Bonding Ins.*

*Co. v. Gitens & Sprinkle Enters., Inc.*, 960 F.2d 366, 372 (3d Cir. 1992)). The remedy, in other words, is the return of the specific property in which the claimant retained an equitable interest—not a judgment for the historical dollar value of that property.

22. Mr. Chang does not seek the return of any specific property. He seeks "funds . . . equal to the value of the Chang Tokens on May 23, 2021"—a fixed sum of money to be paid out of estate assets. Adversary Complaint, Prayer for Relief ¶ B. He does not allege that the Tokens remained in the Debtors' possession, and in fact, he alleges that the Tokens were deployed in the Debtors' decentralized finance activities within hours of the transfer. *See* Adversary Complaint, ¶¶ 22–23. Any such funds he is now seeking would necessarily be drawn from the estate's general assets—and money paid from commingled funds under a debtor's control is presumptively property of the debtor. *See Radnor Holdings Corp. v. PPT Consulting, LLC (In re Radnor Holdings Corp.)*, No. 06-10894 (PJW), 2009 WL 2004226, at *2 (Bankr. D. Del. July 9, 2009). The authority cited in the Response confirms that, as Mr. Chang describes it, an equitable demand falls outside the definition of "claim" where "monetary damages were not an alternative to the equitable remedy." Response, ¶ 22 (discussing *In re Ben Franklin Hotel Assocs.*, 186 F.3d 301, 305, 307–08 (3d Cir. 1999)).

23. Here, monetary payment is not merely an alternative to the relief Mr. Chang requests—it *is* the relief he requests. In order to have properly pled relief under count I, Mr. Chang would have had to seek return of the Tokens. Of course, he has not done so because he does not actually want the Tokens back, because they are presently worthless. His request for funds equal to the value of the Tokens on the day of the transfer is not a proper remedy under section 541(d). *See Rosen v. Chowaiki & Co. Fine Art Ltd. (In re Chowaiki & Co. Fine Art Ltd.)*, 593 B.R. 699, 718 (Bankr. S.D.N.Y. 2018) ("At best, a declaratory judgment under Section 541(d) would merely

declare that certain property held by the debtor is not part of the estate."). Because count I seeks payment on account of a prepetition claim, not the return of the property that is allegedly his, this count should be dismissed.

**B. Count II Does Not Plead the Specific, Traceable Property Required for a Constructive Trust, Nor Is a Constructive Trust a Proper Cause of Action.**

24. A constructive trust is a remedy that relates to specific property or identifiable proceeds of specific property. *See Hogg v. Walker*, 622 A.2d 648, 652 (Del. 1993). Mr. Chang mischaracterizes the nature of the remedy he seeks, and the authority he cites recognizes as much: a constructive trust is the typical *remedy* for an unjust enrichment claim "when specific property can be identified." *See* Response, ¶ 46 (quoting *Principal Growth Strategies, LLC v. AGH Parent LLC*, No. 2019-0431-JTL, 2024 Del. Ch. LEXIS 17, at *55-56 (Del. Ch. Jan. 25, 2024)). Accordingly, "[w]hen attempting to establish rights to commingled funds, a claimant must make two showings in order to: (1) demonstrate that the trust relationship and its legal source exists, and (2) identify and trace the trust funds if they are commingled." *Halperin v. Moreno (In re Green Field Energy Servs., Inc.)*, 585 B.R. 89, 105 (Bankr. D. Del. 2018) (quoting *Goldberg v. N.J. Lawyers' Fund for Client Prot.*, 932 F.2d 273, 280 (3d Cir. 1991)).

25. The Adversary Complaint pleads none of the above. Moreover, Mr. Chang does not ask the Court to impose a trust over identified property, likely for two different reasons. First, Mr. Chang seems to understand that the Tokens are ***not*** identifiable property (which is fatal to his constructive trust claim, which requires identification and tracing of trust funds). Second, as explained above, Mr. Chang does not actually want the Tokens back, so instead, he asks the Court to direct the Plan Administrator to "segregate and return funds" in a fixed amount equal to the Tokens' value on a date nearly three years before the Petition Date. That is a request for a monetary judgment, not imposition of a constructive trust. The relief pled with respect to count II is

inconsistent. Mr. Chang alleges that he lacks an adequate remedy at law "with respect to the return of $2,199,337.00," but a demand for a sum certain is quintessentially a remedy at law—and one that is open to him through the Crypto Loss Claim Procedures. *Id.* at ¶ 39. Mr. Chang's assurance that tracing is a "question of proof and remedy" for another day does not cure this defect—absent allegations identifying specific property capable of being held in trust, there is nothing over which a constructive trust could be imposed. *See* Response, ¶ 50. Accordingly, count II should be dismissed.

**C. Count III Seeks Only Money Damages on Account of a Prepetition Claim.**

26. Conversion is "any distinct act of dominion wrongfully exerted over the property of another, in denial of [the plaintiff's] right, or inconsistent with it." *Kuroda v. SPJS Holdings, L.L.C.*, 971 A.2d 872, 889 (Del. Ch. 2009) (quoting *Drug, Inc. v. Hunt*, 168 A. 87, 93 (Del. 1933)). The remedy for conversion is an award of money damages, not the return of the property itself. *See Gulf Aviation Servs. Grp. WLL v. Wilmington Tr. Co.*, No. N20C-05-128 AML CCLD, 2023 WL 9118772, at *14 (Del. Super. Ct. Dec. 29, 2023) ("Generally, the measure of damages for conversion is the converted property's fair market value at the time of the conversion."). Count III confirms that Mr. Chang seeks payment of money from the estate on account of alleged prepetition conduct. That is a "right to payment" and therefore a "claim" within the meaning of section 101(5) of the Bankruptcy Code, which may be pursued, if at all, only through the claims process. *See* 11 U.S.C. § 101(5)(A); Motion, ¶¶ 15–16.

27. Moreover, Delaware law generally prohibits claims for the conversion of money. An action for conversion will not lie to enforce a claim for the payment of money, and "an action for conversion of money will lie only where there is an 'obligation to return the identical money' delivered by the plaintiff to the defendant." *Kuroda*, 971 A.2d at 889. Although courts have recognized that cryptocurrency may constitute intangible property, the Tokens at issue here are

TerraClassicUSD—a fungible, dollar-pegged token that Mr. Chang himself treats interchangeably with "$2,199,337.00, an amount equal to the face value of the Chang Tokens." Adversary Complaint, ¶ 43. Mr. Chang does not allege that the Plan Administrator is obligated to return the identical Tokens. To the contrary, he alleges that the Debtors "unjustifiably failed to return the Chang Tokens *or funds equal to the face value of the Chang Tokens*." *Id.* ¶ 37 (emphasis added). And, as explained in the Motion, Mr. Chang has not pled the fraudulent conduct committed by the Debtors or duty the Debtors had to Mr. Chang required by Delaware law in order to properly plead conversion. *See* Motion ¶¶ 25–26 (citing *Halperin v. Moreno (In re Green Field Energy Servs., Inc.)*, 610 B.R. 760, 776 (D. Del. 2019)). Accordingly, count III should be dismissed.

**IV. The Adversary Complaint Fails to State a Claim.**

28. Rule 12(b)(6) requires dismissal of a claim when a plaintiff fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). For purposes of Rule 12(b)(6), the Bankruptcy Court must decide whether the facts alleged, if true, "state a claim to relief that is plausible on its face." *CVS Pharm., Inc. v. Forest Labs. Ireland, LTD v. Forest Laboratories Inc. (In re Watson Laboratories, Inc.)*, 101 F.4th 223, 235 (2d Cir. 2024) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). At a minimum, such allegations must "raise a right to relief above the speculative level." *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "When the court can infer only a 'mere possibility of liability,' 'the complaint has alleged—but it has not show[n]—that the pleader is entitled to relief.'" *Id.* (citing *Iqbal*, 556 U.S. at 679). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Each of the counts alleged in the Adversary Complaint fails to state a claim upon which relief can be granted, and, accordingly, should be dismissed pursuant to Rule 12(b)(6). Because the Adversary Complaint does not allege facts sufficient to dispute that the Debtors maintained legal and equitable ownership of the Tokens at all relevant times,

Mr. Chang's claims for declaration of property of the estate, constructive trust, and conversion should be dismissed. Likewise, because Mr. Chang's request for estimation and allowance of the Chang Crypto Loss Claim must be resolved through the Crypto Loss Claim Procedures, and his request to recharacterize that claim as a General Unsecured Claim is foreclosed by his failure to file a Proof of Claim by the General Bar Date, Mr. Chang's claims for estimation and allowance and for recharacterization should also be dismissed.

**<u>CONCLUSION</u>**

29. For the reasons set forth herein, the Plan Administrator requests that the Court grant the Motion to Dismiss and dismiss all causes of action asserted against it in the Adversary Complaint for failure to state a claim upon which relief can be granted, and grant such other relief as is just and proper.

[*The remainder of this page is intentionally left blank]*

Dated: November 2, 2026
Wilmington, Delaware

*/s/ Zachary I. Shapiro*

**RICHARDS, LAYTON & FINGER, P.A.**
Zachary I. Shapiro (No. 5103)
Alexander R. Steiger (No. 7139)
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone: (302) 651-7700
Email: shapiro@rlf.com
steiger@rlf.com

*Co-Counsel for the Defendant*

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Christopher T. Greco, P.C. (admitted *pro hac vice*)
Elizabeth Helen Jones (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
Email christopher.greco@kirkland.com
elizabeth.jones@kirkland.com

-and-

Michael F. Williams, P.C. (admitted *pro hac vice*)
1301 Pennsylvania Ave., NW
Washington, DC 20004
Telephone: (202) 389-5000
Facsimile: (202) 389-5200
Email: michael.williams@kirkland.com

-and-

Christopher S. Koenig (admitted *pro hac vice*)
Casey McGushin (admitted *pro hac vice*)
333 West Wolf Point Plaza
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
Email chris.koenig@kirkland.com
casey.mcgushin@kirkland.com

*Co-Counsel for the Defendant*